IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 1, 2002, at Jackson

**STATE OF TENNESSEE v. ROBERT S. LUTRICK**

**Appeal from the Circuit Court for Giles County**
**No. 9809     Robert L. Jones, Judge**

---

**No. M2001-02720-CCA-R3-CD - Filed December 31, 2002**

---

After a Giles County Circuit Court jury convicted the defendant, Robert S. Lutrick, of aggravated assault, a Class C felony, he applied to the court for an order of diversion.  The trial court denied the request and sentenced the defendant to the minimum Range I sentence of three years, to be served on probation.  The defendant now appeals the denial of judicial diversion.  Upon review, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ALAN E. GLENN, JJ., joined.

Claudia Jack (at trial), Pulaski, Tennessee; and R. H. Stovall, Jr. (on appeal), Columbia, Tennessee, for the Appellant, Robert S. Lutrick.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; T. Michel Bottoms, District Attorney General; and Richard H. Dunavant and Patrick Butler, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

The defendant's difficulties began on July 5, 2000, at a Dairy Queen in Ardmore.  At the end of June, the defendant had taken his two young sons on a scheduled visitation to Jackson, Mississippi.  He and his ex-wife, Lori Huey, who is now the victim's wife,  had arranged to meet at the Dairy Queen at 2:00 p.m. on July 5 to exchange the boys following the visitation.

Apparently Lori Huey became upset when she learned that the defendant would be eight hours late in meeting her.  At 10:00 p.m., Lori Huey went to the Dairy Queen, accompanied by her husband, George I. Huey, Jr., who is the victim, and by her four-year-old daughter, fathered by the victim.  After the defendant arrived, he and Lori Huey left their respective vehicles and conversed.  According to the victim, the defendant was agitated, and the victim decided to get out

of his car. The defendant and the victim had words, and the victim testified that the defendant rushed toward him, although the defendant essentially denied moving toward the victim. At any rate, at some point, the victim, who is a larger man than the defendant, shoved the defendant. Ultimately, according to the victim, the defendant went to his vehicle, retrieved a handgun, pointed it at the victim, and said, "I am going to kill you. You are going to die." The victim testified at trial that he was scared for his life. After a couple of minutes, the defendant pulled the gun away and returned to his car. The victim testified that before the defendant departed, the defendant said, "I'm going to kill you, and it's not a matter of 'if.' It's a matter of when."

On cross-examination, the victim essentially admitted that the defendant's dislike of the victim began some years before when the defendant discovered that the victim had impregnated Lori Huey, who was at the time the defendant's wife.

The defendant testified that, after the victim shoved him twice, the defendant went to his car to leave; however, the victim followed him to his car. The defendant believed that the victim was going to assault him and that the victim was too close to allow the defendant time to get into his vehicle. The defendant reached into the vehicle, grabbed a pistol, and showed it to the victim. He denied that he ever pointed the weapon at the victim. He admitted that, after he replaced the pistol in his vehicle, he and the victim exchanged words, and he threatened the victim. The defendant testified that the pistol was not loaded.

After the jury convicted the defendant of aggravated assault, the trial court conducted a sentencing hearing. The defendant testified that he had never been arrested or convicted of a crime, was current in paying his child support, and was gainfully employed as a graphics designer. He was 38 years of age and did not use alcohol or drugs. He lived in Alabama, where he owned a home. Prior to the date of the offense, the State of Alabama had issued him a permit to carry a handgun; however, the defendant had since sold the handgun to a co-worker. He testified that he had no other firearms, had never committed a violent act, and characteristically avoided confrontations.

His job supervisor testified that the defendant had sold the pistol to a co-worker and that the defendant was a good employee who had never been known to lose his temper or act violently. A former employer also testified that the defendant has a calm personality and is not violent.

On the basis of his background, the defendant sought judicial diversion. At the conclusion of the sentencing hearing, the trial court denied the request. The trial judge acknowledged that the "case was provoked by the conduct" of the victim and that the victim was the initial aggressor in the July 5, 2000 episode; nevertheless, the judge found that the defendant "went well beyond what was permitted in this case by pulling a deadly weapon and threatening to use it." The judge noted that the defendant should have never inserted a firearm into a "very emotional environment." Based upon this finding, the court held that the crime was serious and that the charge should not be diverted. The court commented that, as a convicted felon, the defendant would be prohibited from possessing a firearm. Also, the trial judge found the defendant's

contention that the gun was unloaded to be incredible. In summarizing his rationale for denying diversion, the trial judge said, "[T]his man should not be trusted with a gun again, and it's not an appropriate case for diversion."

The trial court imposed the minimum Class C, Range I sentence of three years but probated the entire sentence.

The Sentencing Reform Act of 1989 provides:

> If any person who has not previously been convicted of a felony or a Class A misdemeanor is found guilty or pleads guilty to . . . a Class C, D, or E felony, the court may, without entering a judgment of guilty and with the consent of such person, defer further proceedings and place the person on probation upon such reasonable conditions as it may require and for a period of time not less than the period of the maximum sentence . . . of the felony with which he is charged. . . .

Tenn. Code Ann. § 40-35-313(a)(1) (1997). This procedure, commonly known as judicial diversion, is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant diversion rests with the trial court, not the prosecutor. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992).

The lower court's denial of judicial diversion is subject to reversal on appeal only if that court abused its discretion. *State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn. 1983). An abuse of discretion occurs when the trial court's denial of judicial diversion is unsupported by any substantial evidence. *Id.*; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

In determining whether to grant judicial diversion, the trial court must consider

(a) the accused's amenability to correction,

(b) the circumstances of the offense,

(c) the accused's criminal record,

(d) the accused's social history,

(e) the accused's physical and mental health,

(f) the deterrence value to the accused as well as others, and

(g) whether judicial diversion will serve the interests of the public as well as the accused.

*Parker*, 932 S.W.2d at 958; *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). Moreover, the record must reflect that the court has weighed all of the factors in reaching its determination. *Bonestel*, 871 S.W.2d at 168. The court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id.*

In essence, the trial court in the present case based its decision to deny judicial diversion on a single factor – the circumstances of the offense. The trial court focused upon the circumstance that the defendant had brandished a gun during an emotion-steeped situation. The trial judge did not specifically mention the other factors that should be considered; however, the trial judge's comments reflect that he announced his diversion and sentencing decisions together after he had taken a considered approach to the total disposition of the defendant's case. The comments reflect that, in ordering full probation, the judge considered the defendant's positive social history, his lack of a criminal record, and his amenability to correction. At one point, the trial judge commented that the defendant did not need counseling in anger management as a condition of probation, and this comment reflects that the judge considered the state of the defendant's mental health. Thus, although the trial court determined that the defendant merited a fully probated sentence and that he should be supervised for only the first year of the three-year probation, the court, at the same time, obviously thought that the circumstances of the offense outweighed all other factors in determining the diversion issue.

The trial court's determination is supported by substantial evidence in the record. The trial judge was troubled, as are we, by the fact that the aggravated assault was committed in the presence of three children. The offense was exacerbated by the defendant's threats to do harm to the victim in the future.

As mentioned, we review the denial of judicial diversion for an abuse of discretion. Because substantial evidence supports the lower court's decision, we cannot find that the court abused its discretion. Under our law, this means that even if we would have preferred a different result, we are constrained to uphold the trial court in the exercise of its legitimate discretion and judgment.

Thus, the lower court's judgment is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-4-