# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### April 29, 2003 Session

## STATE OF TENNESSEE v. RHONDA CLOER

**Interlocutory Appeal from the Criminal Court for Polk County**
**No. 00-065     R. Steven Bebb, Judge**

---

**No. E2002-02252-CCA-R9-CD**
**September 4, 2003**

---

The Polk County Grand Jury indicted the Defendant for three counts of vehicular homicide, four counts of aggravated assault, and twelve counts of failure to stop a school bus at a railroad crossing. The Defendant filed an application for pretrial diversion, and the trial court ordered that a pretrial diversion report be completed. Upon completion of the report, the Assistant District Attorney General denied the application, and the Defendant appealed to the District Attorney General, who also denied the application. The trial court granted a writ of certiorari and, thereafter, affirmed the District Attorney General's decision. The Defendant sought, and was granted, permission to take an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. We granted the Defendant's application for interlocutory review to address the Defendant's contention that the State abused its discretion by denying her application for pretrial diversion. After a thorough consideration of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Conrad Finnell, Cleveland, Tennessee, for the appellant, Rhonda Cloer.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kathy D. Aslinger, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Sandra N. Donaghy, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I.  Facts

This case arises from a tragic set of circumstances. The Defendant, Rhonda Cloer, was driving a school bus in Polk County when it collided with a freight train, killing three children and seriously injuring four others. The Defendant was indicted for three counts of vehicular homicide,

four counts of aggravated assault, and twelve counts of violating Tennessee Code Annotated section 55-8-147, which requires a school bus driver to come to a stop between fifteen and fifty feet from the nearest rail of a railroad crossing.

The Defendant filed an application for pretrial diversion, and the trial court ordered that a pretrial diversion report be completed. After reviewing the pretrial diversion report, the Defendant's application for pretrial diversion, and the Tennessee Highway Patrol file, an Assistant District Attorney General denied the Defendant's request for diversion. In its letter denying pretrial diversion, the prosecution stated:

> The loss of life of the three children killed as a result of the crash, and the serious injuries suffered by the others, their families, and all involved, is tragic. Alone, this serves as a basis to deny diversion. When coupled with the fact that [the Defendant] flippantly disregarded the safety of the children in her care by repeatedly and recklessly cross[ing] the track without stopping begets a question of when would a collision occur rather than if it would occur.

The prosecution noted that, although she did not have any prior convictions, the Defendant was arrested for aggravated assault and simple battery on November 8, 1986, and for forgery on March 5, 1994. The prosecution stated that "the contact [the Defendant] has had with the law, and the nature of that contact, suggests an inability to practice good citizenship in the future without the deterrent effect of criminal prosecution."

The prosecution noted that some of the factors that it considered favored judicial diversion. The Defendant completed high school and had no problems as a juvenile. Further, the Defendant married her current husband in 1994, and they have a seven-year-old daughter who was injured in the bus accident. The Defendant had been employed relatively consistently from 1995 until the date of the accident and she was currently working at Mohawk Industries. In the Defendant's report to the Board of Probation and Parole, she characterized her physical condition as "good" and her mental condition as "fair."

While some factors considered by the prosecution favored judicial diversion, the prosecution maintained that pretrial diversion should be denied based on the deterrent effect. It stated that the Defendant "shows no remorse in her statements and has not accepted any responsibility for her conduct." In addition, the prosecution noted that "[t]he State also has an interest in deterring all others having a position of trust in the care and transport of children, from reckless or wanton disregard in their duties." "[The Defendant's] statements and conduct suggest an unwillingness to appreciate and accept personal responsibility for the deaths and injuries. Instead, she blames others and claims to be suffering from what appears to be self-diagnosed 'traumatic amnesia.'" The prosecution noted, "By virtue of videotaped evidence, it can be seen that [the Defendant] failed to stop at the railroad crossing on ten separate dates between March 13 and March 28, 2000." The prosecution also noted that the Tennessee Highway Patrol and the victims expressed opposition to

the grant of pretrial diversion and that the Defendant was unable to pay restitution. Therefore, the Assistant District Attorney General denied the Defendant's application for pretrial diversion.

Following Assistant District Attorney General's denial, apparently pursuant to the procedure used in the Tenth Judicial District, the Defendant appealed this decision to the District Attorney General. On appeal, the District Attorney General considered the original letter of denial, the Defendant's application and additional information she submitted, the Tennessee Highway Patrol's investigatory report ("THP Report") and the National Transportation and Safety Board Report ("NTSB Report"). From these, the District Attorney General indicated that the original denial of the Defendant's pretrial diversion application was based on the following: (1) the nature and circumstances of the offense; (2) the inability of the Defendant to practice good citizenship without the deterrent effect of criminal prosecution based upon prior episodes with the criminal justice system; (3) the Defendant's physical and mental condition, which included no mention of having "traumatic amnesia" in any of her medical records until the filing of her application for pre-trial diversion; (4) the State's interest in deterring others having a position of trust in the care and transport of children from the reckless and wanton disregard of their duties; (5) the fact that the offenses were not committed impulsively because the Defendant failed to stop at the railroad crossing on ten separate occasions between March 13, 2000 and March 28, 2000; (6) a conclusion that the Defendant would be eligible for probation under the sentencing statutes; and (7) the inability of the Defendant to make restitution and the strong opposition of the victims' families and the prosecuting agency to pre-trial diversion.

In addition to these factors, the District Attorney General addressed several additional arguments that the Defendant made on appeal. In her appeal, the Defendant contended that she was remorseful, and the District Attorney General agreed, stating that such remorse weighed in the Defendant's favor. However, the District Attorney General concluded that "[a]ny remorsefulness the [D]efendant may have is out-weighed by her social history, a demonstrated inability to undertake and carry through on the ordinary obligations of society, the likeliness that she would be a repeat offender and a present inability and incentive to act within the law without the deterrent effect of a public trial." To support this opinion, the District Attorney General noted that, although the Defendant claimed the parents knew she loved the victims and some invited her to memorial services, "the overwhelming information in the file indicates that both victims' family members and investigating officers have strong feelings that pretrial diversion should not be granted . . . ." Further, in regard to the Defendant's social history, the District Attorney General stated that the Defendant was arrested for shooting a prior boyfriend. Additionally, the District Attorney General highlighted the videotaped evidence that showed the Defendant repeatedly failing to stop at the railroad crossing.

The District Attorney General also addressed, but was not persuaded by, the Defendants contention that she repressed the events surrounding the offenses due to "traumatic amnesia." The District Attorney General noted that the Defendant's suppression of events was not indicated until she filed her application for pre-trial diversion in which she stated that she had this disorder. He stated that the emergency room records indicated that the Defendant had no confusion or

disorientation at the hospital. Further, the Defendant told an investigator a short time after the accident that she came to a complete stop, looked both ways, opened and closed the door, looked in the rearview mirror, and then looked both ways again. According to the prosecution, the NTSB Report concluded that if the Defendant had stopped at least fifteen feet from the nearest rail, turned off her radio, and opened the door and window, she would have seen and heard the approaching train. The NTSB report determined "that the probable cause of the collision was the school bus driver's failure to stop before traversing the railroad/highway crossing." The District Attorney General stated, "The overwhelming evidence in the file indicates the [D]efendant has not been truthful about the events leading to the offense or her 'traumatic amnesia,' and that she has failed to accept full responsibility for her actions."

Next, the District Attorney General addressed the Defendant's contention that she did not have the requisite state of mind to be criminally culpable by stating that a person commits an offense who acts intentionally, knowingly, recklessly, or with criminal negligence. The Defendant was "well aware of the law requiring her to stop a school bus, open the door and look as well as listen for oncoming trains." However, the Defendant intentionally drove the bus over the tracks without stopping, looking, and listening for an oncoming train; therefore, she had a criminally-culpable mental state.

Lastly, the District Attorney General addressed the Defendant's assertion that this case is a proper case for a jury in a civil trial to determine the issues of negligence and comparative fault. In dismissing this argument, the District Attorney General stated that although the Defendant claims that the crossing was "blind and unprotected," this is not supported by the weight of information contained in the file. The District Attorney General noted that "[d]ocumentation in the file and [his] personal observations further indicate there were crossbucks and adequate signage in advance of the crossing to warn any vehicle approaching the crossing." Accordingly, the District Attorney General denied the Defendant's appeal for pre-trial diversion.

The Defendant filed a petition to the trial court for a writ of certiorari, alleging that the denial of pretrial diversion by the District Attorney General was an abuse of discretion. Thereafter, the trial court ruled that the District Attorney General did not abuse his discretion in denying the Defendant's application for pretrial diversion. The Defendant sought interlocutory appeal, which the trial court granted. We accepted the Defendant's request for interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure to address the Defendant's contention that the State abused its discretion by denying her application for pretrial diversion.

## II. Analysis

The Defendant argues that the trial court erred by ruling that the prosecution did not abuse its discretion by denying her pretrial diversion. Pretrial diversion allows the district attorney general to suspend prosecution for a period of up to two years against a defendant who meets certain statutory requirements. See Tenn. Code Ann. § 40-15-105(a)(1)(A). In order to qualify for pretrial diversion, the defendant must not have previously been granted diversion under this statute; must

not have a prior misdemeanor conviction for which a sentence of confinement was served or a prior felony conviction within a five-year period after completing the sentence or probationary period for such prior conviction; and must not be seeking diversion for a Class A or B felony, a sexual offense, driving under the influence, or vehicular assault. Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(a)-(c). Such eligibility does not presumptively entitle a defendant to pretrial diversion, but rather places such a decision within the discretion of the district attorney so long as the defendant is statutorily qualified. State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999).

It is the defendant's duty to demonstrate suitability for pretrial diversion. State v. Winsett, 882 S.W.2d 806, 809-10 (Tenn. Crim. App. 1993). However, this requirement does not relieve the prosecutor of his or her duty to consider and articulate all the relevant factors. Curry, 988 S.W.2d at 157. The district attorney is required to consider all relevant factors when determining whether to grant pretrial diversion. State v. Carr, 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993). The Tennessee Supreme Court has outlined the criteria that should be considered by the prosecutor in granting or denying pretrial diversion:

> When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983); see also Curry, 988 S.W.2d at 157.

Where pretrial diversion is denied by the district attorney, the factors and evidence considered in making the decision must be clearly set forth in writing along with the weight accorded to each factor. State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997); Winsett, 882 S.W.2d at 810. The factors must be "clearly articulable and stated in the record." Hammersley, 650 S.W.2d at 355. Failure to consider and articulate all of the relevant factors constitutes an abuse of discretion. See Curry, 988 S.W.2d at 157-58.

A defendant who has been denied pretrial diversion by the district attorney has the right to petition for a writ of certiorari to the trial court for an abuse of prosecutorial discretion. Tenn. Code Ann. § 40-15-105(b)(3). Although a district attorney's decision to grant or deny pretrial diversion is presumptively correct, a trial court may overrule a district attorney's denial of pretrial diversion where there has been an abuse of discretion See Hammersley, 650 S.W.2d at 356. The trial judge cannot simply substitute his or her own judgment for that of the district attorney. State v. Watkins, 607 S.W.2d 486, 488 (Tenn. Crim. App 1980). To show prosecutorial abuse of discretion, the record

must lack any substantial evidence to support the denial of pretrial diversion. <u>Curry</u>, 988 S.W.2d at 158.

The legislature vested the authority to prosecute a case or divert it with the prosecutor rather than the court. <u>See</u> Tenn. Code Ann. § 40-15-105; <u>Carr</u>, 861 S.W.2d at 858. The trial court "must not re-weigh the evidence, but must consider whether the district attorney general has weighed and considered all of the relevant factors and whether there is substantial evidence in the record to support the district attorney general's reasons for denying diversion." <u>State v. Yancey</u>, 69 S.W.3d 553, 559 (Tenn. 2002). On appeal, this Court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." <u>State v. Bell</u>, 69 S.W.3d 171, 177 (Tenn. 2002). An appellate court should apply the preponderance of the evidence standard of review of the trial court's decision regarding a prosecutor's abuse of discretion. <u>Curry</u>, 988 S.W.2d at 158. "When the facts are undisputed, the underlying issue that this [C]ourt must determine on appeal remains whether, as a matter of law, the prosecutor abused his or her discretion in denying pretrial diversion." <u>State v. Carriger</u>, No. E2000-00823-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 966, at *13 (Tenn. Crim. App. Dec. 20, 2000).

We conclude that the prosecution clearly articulated in the letter its reasons for denying the Defendant pretrial diversion, and the reasons articulated were relevant and supported by substantial evidence in the record. The prosecution noted and considered several factors in the Defendant's favor, however, it ultimately denied the Defendant pretrial diversion. The prosecution clearly articulated the factors that he considered in a lengthy and detailed letter. Because those factors were relevant and supported by substantial evidence in the record, we conclude that there was no abuse of prosecutorial discretion. Therefore, the trial court properly ruled that the prosecutor's decision to deny pretrial diversion was not an abuse of prosecutorial discretion.

Accordingly, the judgment of the trial court is AFFIRMED.

_____
ROBERT W. WEDEMEYER, JUDGE