IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

## STATE OF TENNESSEE v. CANDICE WORKMAN

**Appeal from the Criminal Court for Shelby County**
**No. 03-08180     Arthur T. Bennett, Judge**

_____

**No. W2004-01939-CCA-R3-CD  - Filed May 27, 2005**

_____

The defendant, Candice Workman, pled guilty in the Shelby County Criminal Court to soliciting the sale of less than one-half gram of cocaine, a Class E felony. The trial court sentenced her to one year in the workhouse to be served on probation and fined her $2000.00. On appeal, the defendant contends that the trial court erred by denying her request for judicial diversion. We affirm the trial court but remand the case for correction of a clerical error on the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;**
**Case Remanded**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Terry D. Smart and N. Craig Brigtsen, III, Memphis, Tennessee, for the appellant, Candice Workman.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Robert Carter, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to drug-related offenses arising from the sale of cocaine to an undercover police officer in a nightclub. At the hearing on her petition for judicial diversion, the defendant testified that she went to the nightclub with two girlfriends and her ex-boyfriend, Stefano Weimar, who, unbeknownst to her, was in the business of selling cocaine. She said that he had not previously sold cocaine or used drugs in her presence. She said that at some point during the evening, Mr. Weimar placed two small bags of cocaine into her purse without her knowledge. She said she became aware of this fact while sitting at a table with a group of people with Mr. Weimar sitting next to her. She said that she looked down because Mr. Weimar pointed toward her purse and that she saw the two bags inside the purse. She said that she knew the bags contained cocaine from watching

television and going to the movies. She said that she usually kept her purse open because it was small and that she had no idea when he placed the bags inside of it. She said that she was "very surprised" to discover them there and asked him why he did it. She said he replied that he had no pockets. She said that she threw the bags at him and that he walked away with them. She claimed that she did not take drugs and that she was not in the drug-selling business.

The defendant testified that she was twenty-two years old and lived with her father. She said she worked three different jobs: office manager for her father's transmission company, bartender in a restaurant, and automobile driver for a car dealership. She said that she had been attending the University of Memphis for one year and was working on earning a degree in business. She said that being arrested had frightened her and changed her life for the better. She said that she currently attended church more regularly and felt closer to her family. She believed she should not have the conviction on her criminal record.

On cross-examination, the defendant admitted that she had dated Mr. Weimar for more than four years but said that she was unaware he sold cocaine. She said he started selling drugs after they stopped dating. She denied that she saw people handing him money and explained that he would walk away when he engaged in drug sales. She said that she did not know Mr. Weimar gave the undercover police officer the two bags of cocaine from her purse and that she did not care what he did with the cocaine, she "just wanted it off [her]." The undercover police officer was not present, and the trial court asked the defendant if the officer's testimony would corroborate her statement that she was surprised to find the two bags of cocaine in her purse. She responded that it would. No other witnesses testified.

The trial court asked if any evidence indicated what the undercover police officer had observed while seated at the table with the defendant, i.e., did he note the defendant's surprise to find the bags of cocaine in her purse. The prosecutor replied that the report he received contradicted the defendant's statements. It stated that the officer and Mr. Weimar discussed the quality of the cocaine at the table, i.e., was it "fire" or was it "bulls**t," and that Mr. Weimar said it was fire. After they agreed on the quantity and price, Mr. Weimar asked the defendant to produce the cocaine. The defendant then retrieved the two bags of cocaine from her purse and handed them to Mr. Weimar, who gave them to the officer under the table and received from him $100.00. The state said that the officer involved in the arrest was not present in court but that it would produce him if the trial court wanted to hear his testimony.

The trial court determined that probation would be appropriate but that judicial diversion may not be proper based on the fact that the original charge was for a Class B felony. The record reflects that the defendant was initially indicted for three drug-related offenses: sale of one-half gram or more of cocaine, possession with intent to sell one-half gram or more of cocaine, and possession with intent to deliver one-half gram or more of cocaine, Class B felonies. However, the trial court found that Mr. Weimar was the target of the police investigation and that the defendant was only a peripheral actor in the crime. The trial court stated that its primary concern was whether the defendant was truthful during her testimony about the events leading to her arrest and that it

determined she was not. The trial court denied her request for judicial diversion but granted her probation. Although the trial court found her testimony incredible, it noted that she was used merely to carry the drugs and that she did not sell anything.

## ANALYSIS

The defendant contends that the trial court abused its discretion in denying her request for judicial diversion. She asserts that she is presumed to be a favorable candidate for alternative sentencing. She argues that the trial court ignored factors it was required to consider and, instead, denied diversion based solely on its belief that her statements to the court were not truthful. She contends that she is entitled to diversion because she has a supportive family, no criminal record, attends college, holds three jobs, and, as noted by the trial court, she was not in the business of selling drugs. The state contends that the trial court's denial of diversion is supported by the evidence and that truthfulness is an appropriate factor to consider in the sentencing process. We agree with the state.

A defendant is eligible for judicial diversion when he or she is found guilty or pleads guilty to a Class C, D, or E felony and has not previously been convicted of a felony or a Class A misdemeanor. See T.C.A. § 40-35-313(a)(1)(B)(i). Judicial diversion allows the trial court to defer further proceedings without entering a judgment of guilt and to place the defendant on probation under reasonable conditions. T.C.A. § 40-35-313(a)(1)(A). When the probationary period expires, if the defendant has completed probation successfully, the trial court will dismiss the proceedings against the defendant with no adjudication of guilt. See T.C.A. § 40-35-313(a)(2). The defendant may then apply to have all records of the proceedings expunged from official records. See T.C.A. § 40-35-313(b). A person granted judicial diversion is not convicted of an offense because a judgment of guilt is never entered. See T.C.A. § 40-35-313(a)(1)(A).

Judicial diversion is not a sentencing alternative for a defendant convicted of an offense. See T.C.A. § 40-35-104(c). Therefore, there is no presumption that a defendant is a favorable candidate for judicial diversion. See State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995). When a defendant challenges the manner of serving a sentence, this court conducts a de novo review of the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). However, when the accused challenges the trial court's denial of a request for judicial diversion, a different standard of appellate review applies. Because the decision to grant judicial diversion lies within the sound discretion of the trial court, this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Upon review, we will give the trial court the benefit of its discretion if "'any substantial evidence to support the refusal' exists in the record." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's

criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, Inc., 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, Inc., 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 959.

The record reflects that in considering the defendant's request for judicial diversion, the trial court took into account the circumstances of the offense, the defendant's criminal record, and her social history. It noted that she had no criminal record and that she did not sell any drugs. The trial court also appreciated that the defendant's parents were present. Although the trial court did not address all of the factors in order, it addressed all of the relevant factors over the course of explaining the defendant's sentence. In support of denying diversion, the trial court found most significant the fact that the defendant had initially been charged with a Class B felony and that she failed to tell the truth. The trial court extensively questioned the defendant concerning the circumstances of the crime throughout the hearing and ultimately had "problems" with her story. The trial court characterized the taking of an oath as not "just a formality" and observed that people lie in court "all the time," indicating that it believed granting judicial diversion would not have deterrence value for the defendant and others.

The defendant argues that the trial court should not base its denial of diversion on the defendant's failure to admit guilt, relying on State v. Lewis, 978 S.W.2d 558 (Tenn. Crim. App. 1997). In Lewis, three defendants were convicted in a jury trial for evading arrest and claimed they were innocent. The trial court denied judicial diversion for two defendants based on the defendants' refusal to take full responsibility for committing the offense, the seriousness of the charges, the public interest, and its belief that the defendant was a primary actor in the case. On appeal, this court concluded that the trial court's statement outlining its reasons for the denial was vague and conclusory and that it failed to consider all of the factors appropriate to the grant or denial of judicial diversion. Id. at 567. Accordingly, this court remanded the case to the trial court for reconsideration because the record was inadequate for appropriate appellate review. As for the refusal to accept responsibility for the offense, this court noted that a denial of guilt should not, in and of itself, preclude judicial diversion. Id.

The defendant's reliance on Lewis is misplaced. While we agree that a denial of guilt should not preclude granting diversion, the trial court in the present case did not base its denial of diversion on the defendant's failure to admit guilt. She pled guilty. The trial court based its decision primarily on her failure to give truthful testimony under oath and the need for deterrence in lying to the court. In other words, the record reflects that the denial was based in large part on the defendant's lack of credibility. Untruthfulness is a factor which may be considered in determining the appropriate sentence for a defendant. See United States v. Grayson, 438 U.S. 41, 50, 98 S. Ct. 2610, 2616 (1978) ("A defendant's truthfulness or mendacity while testifying on his own behalf, almost without exception, has been deemed probative of his attitudes toward society and prospects for rehabilitation

and hence relevant to sentencing."); <u>State v. Neeley</u>, 678 S.W.2d 48, 49 (Tenn. 1984) (stating that the truthfulness of a defendant, or lack thereof, is a factor to consider when ruling on a petition for suspended sentence); <u>State v. Dowdy</u>, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994) (noting it is widely held that a defendant's truthfulness is a relevant factor in the sentencing process); <u>State v. Anderson</u>, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992) (finding no abuse of discretion in denying diversion when the trial court did not consider the defendant sincere in accepting responsibility for the offense and was duly concerned with his attempt to divert blame to another).

In sum, we do not believe that the trial court abused its discretion by denying the defendant's request for judicial diversion. Based on the foregoing and the record as a whole, we affirm the judgment of the trial court. However, we note that the judgment spells the defendant's name "Candace" while all other documents, including the defendant's petition to plead guilty, spell her name "Candice." We remand the case for correction of the judgment of conviction for this clerical error.

_____
JOSEPH M. TIPTON, JUDGE