STATE of Tennessee, Plaintiff-Appellant,

v.

Freddie L. HAMMERSLEY,
Defendant-Appellee.

Supreme Court of Tennessee,
at Nashville.

April 25, 1983.

David M. Himmelreich, Asst. Atty. Gen., Nashville, for plaintiff-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

Mary A. Parker, Nashville, for defendant-appellee; Deneise Turner Lott, Nashville, of counsel.

## OPINION

BROCK, Justice.

### I

The appellee, Freddie L. Hammersley, was arrested for stealing four hubcaps valued at approximately three hundred dollars ($300.00). The appellee sought to enter into a memorandum of understanding under the provisions of T.C.A., § 40–15–102, *et seq.,* the pretrial diversion statute, with John Hestle, the District Attorney General for Montgomery County, but Mr. Hestle refused to do so. Pursuant to T.C.A., § 40–15–105(b)(3), the appellee petitioned the trial court for a writ of certiorari, alleging that the failure to divert constituted an abuse of prosecutorial discretion. The trial court, Honorable Sam E. Boaz presiding, denied the petition and on appeal to the Court of Criminal Appeals that court reversed. We granted the State's application for permission to appeal under T.R.A.P. 11.

█ The decision whether or not to accede to pretrial diversion rests within the discretion of the District Attorney General, subject to review by the trial court for abuse of prosecutorial discretion. T.C.A., § 40–15–105(b)(3).

"The statute vests in the prosecuting attorney the decision as to whether a given defendant is suitable for pretrial diversion and the terms under which diversion will be granted. However, that discretion is not unbridled: It must be exercised so as to serve the interests of justice. (Citations omitted.) To that end, it is subject to review by the trial court upon proper application by the defendant." *Pace v. State,* Tenn., 566 S.W.2d 861, 864 (1978).

The task thus imposed upon prosecutors of deciding which defendants are worthwhile candidates for diversion is indeed a demanding one. Almost all criminal defendants, whether first offenders or not, would claim remorse and ascribe to themselves a desire to walk the straight and narrow if presented an opportunity to avoid prosecution; the responsibility placed upon prosecutors to pick and choose among the lot based upon a particular candidate's amenability to rehabilitation or recidivism requires the exercise of unusual powers of discrimination.

Diversion allows for the quick and inexpensive disposition of cases for which such action is deemed appropriate. As the Supreme Court of New Jersey said in *State v. Leonardis,* 71 N.J. 85, 363 A.2d 321 (1976):

"[Pretrial diversion] programs have retained many of the same advantages which attend a prosecutor's informal decision to divert prior to criminal prosecution. In this way, [pretrial diversion] provides one means of addressing the problems of congestion and backlog of cases which currently confront our prosecutors, public defenders and courts. To the extent that a [pretrial diversion] program averts the costs of processing these cases, it also permits a more efficient use of the limited resources available to law enforcement authorities." 363 A.2d at 327.

We believe that in order for prosecutors to properly exercise the discretion vested in them by the pretrial diversion statute some objective standards should be established to guide them in the decision-making process. The following observation by the Supreme Court of New Jersey provides enlightenment on this point:

"The success of such programs when measured in terms of decreased recidivism, increased job placements and reduced caseloads is ultimately a function of the specific services which they provide. However, a related and equally important sign of success—the ability of a program to encourage and promote successful diversion of criminal cases—is founded to a large extent upon the eligibility criteria which determine admissions to the program." *State v. Leonardis, supra,* 363 A.2d at 329.

Some points of reference are already established; for instance, Chief Justice Henry in his separate concurring opinion in *Pace v. State, supra,* has suggested:

"Because pre-trial diversion is, in effect pretrial probation, I consider it a fair approach to read into the statute the provisions of Sec. 40–2904, T.C.A., relating to the discretion of the trial judge in granting probation. There, the trial court acts on the basis of a report which 'shall inquire into the circumstances of the offense, criminal record, social history, and present condition of the defendant.' " 566 S.W.2d at 871.

*See, also, Blackwell v. State,* Tenn.Cr.App., 605 S.W.2d 832 (1980); *State v. Poplar,* Tenn.Cr.App., 612 S.W.2d 498 (1980).

However, evidence of the need for further clarification is shown by the divergence of opinion which exists within the Court of Criminal Appeals. In *Ball v. State,* Tenn.Cr.App., 604 S.W.2d 65 (1979), it was held that "a trial judge may now deny probation upon the ground of deterrence alone." 604 S.W.2d at 66. This holding was the direct result of an amendment to T.C.A., § 40–2904 (ch. 911, Pub. Acts, 1978). Since Henry, C.J., had likened the discretion of prosecutors in pretrial diversion situations to that possessed by the trial judge in probation cases, the question thus arose whether deterrence alone was an adequate justification for denying pretrial diversion. In *Blackwell v. State, supra,* the court responded to this question, Judge Daughtrey saying:

"Deterrence obviously has little or no relevance in the pre-trial diversion setting. By deliberate design, invocation of the diversion statute avoids the consequences of a public prosecution and conviction, and thus any 'deterrent effect' on others in the community is intentionally minimized or eliminated. The 'deterrent value' to the individual defendant comes as the result of the program itself, which should be devised to encourage the defendant's rehabilitation, where necessary, and to ensure that he or she will not be the subject of criminal charges in the future." 605 S.W.2d at 834.

An opinion seemingly contrary to this interpretation was expressed in *State v. Watkins,* Tenn.Cr.App., 607 S.W.2d 486 (1980), wherein Judge Byers, writing on behalf of the court, stated:

"The District Attorney General relies upon the need to deter the traffic in drugs which he characterizes as being of serious proportion and which he says is a factor in other crimes. This is a valid reason for refusing to enter into a memorandum of understanding." 607 S.W.2d at 489.

■ In our opinion deterrence should be considered in pretrial diversion cases in the same manner as we have approved for consideration in probation cases. Our instruction in that regard is set out by Justice Fones in *State v. Michael,* Tenn., 629 S.W.2d 13 (1982) as follows:

"In making the point [in *Moten v. State,* Tenn., 559 S.W.2d 770, 773 (1977)] that some deterrence is present in every case we did not intend to say that the factor of deterrence has exactly the same weight in every case. An element of deterrence is present in every case but the degree of significance of this factor in restraining the offender or curbing the propensity for criminal activity in others varies widely with the class of offense and the facts of each case.

\*     \*     \*     \*     \*     \*

" . . . clearly, a trial judge has discretion to find that the deterrent effect justifies denial of probation, and just as clearly has discretion to find that the deterrence factor does not warrant a denial of probation. In short, the case law and the legislative declaration envision an examination of the deterrence factor in the context of each case and assigning it such weight, credit and value as the circumstances warrant." 629 S.W.2d at 14, 15.

Deterrence to others should not be eliminated as a matter of law and in all cases from consideration by the District Attorney General or by the trial judge in deciding whether to grant pretrial diversion; deterrence either of the individual or of others is as relevant here as in granting or denying probation.

When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered. Such factors must, of course, be clearly articulable and stated in the record in order that meaningful appellate review may be had. Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant. *See,* Tenn., *State v. Grear,* 568 S.W.2d 285 (1978); *Stiller v. State,* Tenn., 516 S.W.2d 617, 621 (1974).

## II

In the instant case the record reveals that the appellee was twenty-one years old at the time the offense was committed and had no criminal record. Subsequent to his arrest a probation report was prepared that was admitted at the hearing on the petition for a writ of certiorari. This report contains twelve categories of information that are to be considered when deciding whether probation or, in this case, diversion, is warranted. The categories are: attitude, behavior since arrest, prior record, home environment, current drug usage, current alcohol usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement. The appellee received a favorable recommendation in all of these areas except general reputation, family responsibility and attitude of law enforcement. Those three categories were marked "N/A," presumably because the probation officer who prepared the report did not have sufficient information on which to base a recommendation. Appellee's probation report also contains a section in which the probation officer is asked to classify the subject of that report as either a high,

medium or low risk. The appellee was designated a low risk.

The appellee was apprehended in Ashland City by a deputy sheriff who knew him personally. The Sheriff's office then notified the Clarksville Police Department that the appellee was in custody. Detective Bobby Gray of the Clarksville Police Department traveled to Ashland City to transport the appellee back to Clarksville. Detective Gray testified as follows:

"Q. What was his attitude on the trip from Ashland City back to Clarksville?

"A. Well, he was very upset. He was nervous. I think he felt like he had done wrong.

"Q. What was his attitude when you got him back to Clarksville?

"A. Well, very much the same.

"Q. Did you question him?

"A. Yes, I did.

"Q. Did he answer all of your questions?

"A. Yes.

"Q. Was he cooperative?

"A. Yes, he was.

"Q. Okay, Did you have any problems out of him at all?

"A. No.

"Q. What was his general attitude with regard to the crime?

"A. Well, he assured me that he had never been into anything else and that he was very sorry that this had happened. He said it was a foolish mistake and he seemed very sorry that it had happened."

Ricky Young is the pastor of Dalemere Baptist Church. Reverend Young met the appellee less than one month after the commission of the offense with which he is charged. Reverend Young testified that he had observed the appellee on a weekly basis from February 12, 1980, until the hearing on October 29, 1980. Reverend Young testified as follows:

"[S]ince then he has been active in church up to this date. In October, the first part

of October, we placed him in a leadership office of our church as Sunday School Superintendent over all the Sunday School Departments. And he has been in such good standing that approximately a year from now we are planning to recommend him as being one of the Deacons of our church.

"Q. Do you have an opinion, Reverand [sic] Young, with regard to whether or not this young man is capable of living in the community without doing any crime?

"A. I would say so."

Counsel for the appellee thought that it would be appropriate to call John Hestle, the Montgomery County District Attorney General, since appellee had alleged an abuse of prosecutorial discretion. The trial court questioned Mr. Hestle regarding his willingness to testify and he assented. The following is the complete testimony of District Attorney General Hestle:

"Q. For the record, you are General John Hestle, District Attorney of this district?

"A. Right.

"Q. All right, Mr. Hestle, could you please tell the court the reasons why you denied entering into a Memorandum of Understanding in this particular case?

"A. Right. There are several reasons. Basically, the policy of my office has been not to enter into any pre-trial diversions on a, what we consider, serious crime. And larceny in Montgomery County is a serious crime. According to information I have from the public and everything, almost 1,500 larcenies occurred in the past fiscal year of '79 and '80. And therefore it's our—my office, my policy that it is a serious crime, and therefore, we do not enter into a pretrial diversion agreement with any individuals concerning the larcenies that have occurred here in Montgomery County. And that is my decision based upon being around the public and talking to the public and everything, and that's basically the reason.

"Q. Okay, it had nothing to do with this particular Defendant personally?

"A. No, no. Absolutely not. It's not—I don't do it by defendant basis. I do it basically based upon the seriousness of the crime itself.

"Q. And you are aware, of course, that the Pretrial Diversion Statute applies to crimes with punishment less than ten years?

"A. That is correct.

"Q. But you have decided that the policy of your office would differ from the policy of the State?

"A. That is correct, based upon the fact that we believe it to be a serious crime.

"Q. Thank you.

"EXAMINATION BY THE COURT:

"Q. All right, Mr. Hestle, let me ask—how many did you say? How many larceny?

"A. Almost 1,500 in the past year. That would be the '79–'80 fiscal year.

"THE COURT: All right, you can step down."

█ The record must show an absence of any substantial evidence to support the refusal of the District Attorney General to enter into a memorandum of understanding before a reviewing court can find an abuse of discretion. *State v. Watkins, supra,* at 488. Furthermore,

"[t]he action of the prosecutor is presumptively correct and it should only be set aside on the basis of patent or gross abuse of prosecutorial discretion." *Pace v. State, supra,* at 870.

Applying the above standards to the facts and law set forth herein, we conclude that the denial of pretrial diversion in the instant case constituted an abuse of prosecutorial discretion.

█ The District Attorney General was obviously in error in undertaking to apply a local policy contrary to or different from that provided by state law. He admitted that he did not consider the appellee's personal eligibility for pretrial diversion in reaching his decision. Such action is, as Mr. Hestle freely admitted, contrary to the policies formulated in the Pretrial Diversion Act.

It was proper for the District Attorney and the trial judge to consider the deterrence factor, viz., the incidence of thefts in Montgomery County during the recent past; but, to deny pretrial diversion based on that factor alone, without even considering the appellee's personal merits—"I don't do it by defendant basis"—was an abuse of discretion.

In the case at bar there is overwhelming evidence of appellee's eligibility for pretrial diversion.

For the reasons set out above, the judgment of the Court of Criminal Appeals is affirmed. Costs are taxed against the State.

FONES, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.