# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
August 2, 2005 Session

## STATE OF TENNESSEE v. DONNIE GLENN THOMPSON

**Appeal from the Circuit Court for Madison County**
**No. 04-661      Roger Page, Judge**

---

**No. W2005-00658-CCA-R9-CD  - Filed September 19, 2005**

---

The Defendant, Donnie Glenn Thompson, was indicted for one count of stalking his former wife, Kimberly McClinsey.  The Defendant subsequently submitted an application for pretrial diversion on this charge, see Tenn. Code Ann. § 40-15-105.  The district attorney general denied the Defendant's request for pretrial diversion.  The Defendant sought review by the trial court, and the trial court found no abuse of discretion by the district attorney general.  The Defendant now appeals from the trial court's ruling.  Finding that the district attorney general abused his discretion in analyzing the Defendant's application for pretrial diversion, we reverse the judgment of the trial court and remand this matter to the district attorney general for further consideration.

### Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed; Remanded

DAVID H. WELLES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Mitchell Tollison, Jackson, Tennessee, for the appellant, Donnie Glenn Thompson.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Jerry Woodall, District Attorney General; and Jim Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises out of the Defendant's visit to his ex-wife's residence in May 2004.  According to the affidavit of complaint, Ms. Kimberly McClinsey called the police because the Defendant was at her residence and looking in her window.  The police responded and, according to the affidavit, "observed [the Defendant] at [the victim's] window outside of her apartment."  The victim told the police that the Defendant had previously engaged in this behavior and she was afraid "for the safety of her children and herself."  The Defendant acknowledges that he was at the victim's

residence, but contends that he was there in an attempt to get the victim to comply with her legal obligation on a mutual debt.

The Defendant's application for pretrial diversion indicates that he was born in 1949; has a grown son from a previous marriage; attended high school until 1964, at which point he dropped out; has been employed as a truck driver and/or truck owner-operator since 1965; and lived in Henderson, Tennessee, from his birth until 1974, at which time he moved to Jackson, Tennessee, where he has lived ever since. Contained in his application is the following statement of the facts of the alleged offense:

> We were supposed to meet about a Mastercard bill she was supposed to be paying. The Judge ordered her to pay this bill in our divorce. She has paid nothing on this bill. This was the only reason I was there.

In conjunction with the Defendant's request for pretrial diversion, the trial court ordered a pretrial investigation of the Defendant's background. The report prepared following that investigation sets forth the following about the allegations leading to the stalking charge:

> On May 11, 2004 at 2145 hours, Officers Yalda and Vanover responded to stalking at 18 Revere Circle #1 and complaint/victim Kimberly McClinsey advised she had been experiencing her former husband Donnie Thompson stalking her on a couple of occasions by coming to her residence and lying down outside her bedroom window. Ms. McClinsey had filed a report in the past concerning Mr. Thompson stalking her. On this night in particular, Ms. McClinsey saw Mr. Thompson outside her window looking in again. Ms. McClinsey called the police. Officers made the scene and observed Mr. Thompson at Ms. McClinsey's window. Mr. Thompson ran on foot for a short distance, but stopped shortly after yelling [sic] "stop police." Mr. Thompson was arrested for stalking. Mr. Thompson's charges evoked from the calls for police in the past and Ms. McClinsey being in fear for her safety. Each time Ms. McClinsey called the police it was to file a complaint on Mr. Thompson for looking in her window. The couple have been divorced since February of 2004.

The report also indicates that its preparer received no victim statement from Ms. McClinsey. The report further reflects that the Defendant's criminal record consists of five minor traffic offenses.

In addition to his initial application, the Defendant submitted to the prosecutor an additional written statement about the alleged offense. That statement consists of the following:

> I agree totaly [sic] on the laws of a person stalking another person. I was not harassing or stalking them. I would never do anything to harm Kim or her daughters in any way. I was over at her house to talk and beg her for some help paying on the G.M. Mastercard bill that Judge Butler ordered her to pay in our divorce. Our divorce was final Feb. 18, 2004. She has paid nothing at all on her bill to help me

keep my credit in good standing. A copy of page 4 of the Final Decree is attached. Thanks.

The Defendant also provided to the prosecutor twelve very positive letters of reference by long-term friends.

In response to the Defendant's request for pretrial diversion, the district attorney general wrote the following letter to defense counsel:

I have received your request for this office to consider Donnie Thompson for pretrial diversions [sic]. I have considered your request along with the case file, pretrial diversion report, your client's statement, the numerous letters submitted on behalf of Donnie Thompson together with Mr. Thompson's age, academic record, employment record, criminal history and the need for deterrence. Having considered all these factors and weighed them, I decline to enter into a pretrial diversion agreement with Donnie Thompson.

I place no weight on Mr. Thompson's age either for or against diversion. He is fifty-five years old and of sufficient maturity to appreciate the wrongful nature of his conduct and conform his conduct to society's expectations.

I weigh Mr. Thompson's academic record against diversion but I place only slight weight on this factor. Mr. Thompson dropped out of high school in 1964 and has done nothing to further his education since. I therefore weigh this against diversion.

I place no weight either for or against diversion on Mr. Thompson's criminal history. He has no appreciable record other than minor traffic offenses. Because good citizenship is expected of all people I place no weight on this factor one way or the other.

I place some weight in favor of diversion on Mr. Thompson['s] work record. I am precluded from placing much weight by the lack of detail provided as to exact nature, duties, and earnings during his employment. This office considered the joint tax return but in light of an almost 38 year history a one year tax return really doesn't provide much history. I also note that between 1964 and 1972 there is no evidence of any employment, I therefore weigh this factor with very limited weight.

I have read the numerous letters submitted on behalf of Mr. Thompson. Obviously Mr. Thompson has several people who care for him and are willing to step forward on his behalf. I do give this slight weight in favor of diversion.

I weigh Mr. Thompson's lack of remorse in this matter very heavily and weigh this against diversion.

I weigh Mr. Thompson's lack of candor in this matter very heavily against diversion. Mr. Thompson insists that he was merely attempting to contact the victim in order to get her to help pay for a G.M. mastercard bill. This is an absurd attempt to explain away the fact that he has been stalking by the victims' windows, even lying down by them. A fact corroborated by law enforcement observations.

I weigh the need to deter this particular behavior heavily. Jackson has had two homicides this year directly related to ex-boyfriends stalking and killing former companions.

The victim was also interviewed regarding diversion and does oppose diversion. I do give this some weight against diversion as well.

Having considered and weighed the foregoing, I decline to enter into a pretrial diversion agreement with Donnie Thompson and find it is not in the best interest of Mr. Thompson or society.

Following the district attorney general's refusal of his request for pretrial diversion, the Defendant petitioned the trial court for a writ of certiorari and a reversal of the district attorney general's decision. The trial court denied the Defendant's claim for relief, stating in its written order,

After considering the Petition, the pretrial diversion report, the letters supporting the defendant, the District Attorney's letter denying diversion, and the parties' arguments, and the entire record, the Court cannot find the District Attorney abused his discretion in denying pretrial diversion in this cause.

In support of the Court's holding, the Court relies on its findings which were stated in Court at the hearing held on January 4, 2005, and which are hereby incorporated by reference. The Court specifically finds a need to deter the alleged criminal behavior as properly being given great weight against the granting of diversion.

Unfortunately, the record on appeal does not contain a transcript of the January hearing.

## I. Pretrial Diversion

The pretrial diversion statute allows a district attorney general to suspend the prosecution of an eligible defendant for a period not to exceed two years. See Tenn. Code Ann. § 40-15-105(a)(1)(A). In order to qualify for pretrial diversion, the defendant must not have previously been granted diversion; must not have a prior misdemeanor conviction for which a sentence of confinement was served or a prior felony conviction within a five-year period after completing the sentence or probationary period for such conviction; and must not be charged with a Class A felony, a Class B felony, certain Class C felonies, a sexual offense, driving under the influence, or vehicular assault. Id. § 40-15-105(a)(1)(B)(i)(a)-(c).

There is no presumption that a person eligible for pretrial diversion is entitled to diversion. See State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). The "defendant bears the burden of establishing that pretrial diversion is appropriate and in the interest of justice; thus, it is the defendant who must produce substantial favorable evidence for the district attorney general's consideration." State v. Bell, 69 S.W.3d 171, 179 (Tenn. 2002).

The decision to grant or deny an application for pretrial diversion rests within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105(b)(3); Curry, 988 S.W.2d at 157. "When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute[,] a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered." State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983).

> Among the factors to be considered in addition to the circumstances of the offense are the defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

Id. In State v. Bell, our supreme court reiterated that, in reviewing a request for pretrial diversion, "the district attorney general has a duty to exercise his or her discretion by focusing on a defendant's amenability for correction and by considering all of the relevant factors, including evidence that is favorable to a defendant." 69 S.W.3d at178.

If pretrial diversion is denied, the denial must be in writing, must list the evidence considered, discuss which factors were considered, and discuss the weight accorded to each factor. State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997). "This requirement entails more than an abstract statement in the record that the district attorney general has considered these factors." Curry, 988 S.W.2d at 157 (citation omitted).

If an application for pretrial diversion is denied, the defendant may apply to the trial court for a writ of certiorari. See Tenn. Code Ann. § 40-15-105(b)(3). On review, the trial court is constrained to consider only the evidence considered by the district attorney general and must determine whether the district attorney general has abused his or her discretion. See Bell, 69 S.W.3d at 177. An abuse of discretion may only be found where the prosecutor fails to consider all the relevant factors or reaches a decision not supported by substantial evidence. See id. If the district attorney general has denied diversion and failed to consider and weigh substantial evidence favorable to a defendant, the decision should be reversed and the matter remanded to the district attorney general for further consideration. See id. at 179 (emphasis added).

## II. Analysis

We turn now to the district attorney general's letter stating why he denied the Defendant's request for pretrial diversion. The prosecutor placed slight weight against diversion based on the Defendant's failure to complete high school and his failure to "further his education since." The district attorney general fails to explain why the Defendant's academic history reflects negatively upon his amenability to correction. At the time he submitted his application, the Defendant had been steadily employed for almost forty years as a truck driver/owner-operator. As pointed out by defense counsel in his appellate brief, "not everyone is suited for academic pursuits." The failure to complete high school, or any other academic pursuit, is not in and of itself an indicator of a defendant's potential for rehabilitation, especially when the defendant follows this failure with a steady,

consistent and lengthy course of gainful employment. The district attorney general abused his discretion by weighing this factor against the Defendant.

Of greater significance is the district attorney general's flat dismissal of one of the factors most relevant to the Defendant's positive potential for rehabilitation: his lack of any serious criminal record. The prosecutor acknowledged this favorable fact of the Defendant's past but stated, "Because good citizenship is expected of all people I place no weight on this factor one way or the other." The prosecutor's refusal to place any weight on this factor is tantamount to refusing to consider it at all. Yet, a defendant's criminal history -- especially a lack thereof -- is an important signifier of whether the defendant is likely to offend again. That is, a defendant's criminal history is a critical factor to consider in evaluating his or her amenability to correction: the primary focus required in evaluating a request for pretrial diversion. The prosecutor's refusal to give any favorable weight to this factor is a refusal to accord any significance to a factor repeatedly stressed by Tennessee's appellate courts as crucial to the comprehensive analysis required of district attorneys in assessing a request for pretrial diversion. Accordingly, we conclude that the prosecutor abused his discretion by refusing to accord this factor any weight. See Bell, 69 S.W.3d at 179 (recognizing that a district attorney general abuses his or her discretion when he or she denies pretrial diversion "without considering and weighing substantial evidence favorable to a defendant.") (emphasis added).

The district attorney general's letter reveals another shortcoming. In placing only "very limited weight" on the Defendant's thirty-eight year history of employment, the prosecutor notes that "between 1964 and 1972 there is no evidence of any employment." A perusal of the Defendant's pretrial diversion application reveals, however, that the Defendant was employed as a truck driver from 1965 to 1972 by H. D. Thompson Trucking in Henderson, Tennessee. We are further concerned that the district attorney general felt himself "precluded" from placing "much weight" on the Defendant's employment history because the Defendant's application evinced a "lack of detail" on the "nature, duties, and earnings" of his employment. Yet, the Defendant's application provides that he was either a truck driver or a truck owner-operator during his entire working life. Among the letters of support are letters from people who have known and worked with the Defendant for many years. That is a sufficient description to inform the prosecutor about the "nature" and "duties" of the Defendant's employment. Further, we are perplexed by the prosecutor's comments about the lack of detail concerning the Defendant's earnings. The dollar amount of a defendant's earnings is not in and of itself a proper criterion for determining the defendant's suitability for pretrial diversion. Thus, we conclude that the district attorney general abused his discretion by giving "very limited weight" to the Defendant's near forty-year history of steady employment.

The prosecutor weighed two factors "very heavily" against the Defendant in his quest for diversion: the Defendant's "lack of remorse" and "lack of candor" about the offense. The district attorney general obviously does not believe the Defendant's version of the events leading to his stalking charge. Rather, he labels "absurd" the Defendant's explanation of his presence at his ex-wife's residence. The prosecutor insists that the Defendant "has been stalking by the victims' windows, even lying down by them. A fact corroborated by law enforcement observations."

Certainly, the affidavit of complaint indicates that police officers did find the Defendant at his ex-wife's window at her apartment. Further, the "official version" of the offense as reflected in the pretrial diversion investigation report indicates that the Defendant fled a short way from the police when they responded to the scene. These are the only "facts" which appear from the record before us which have been corroborated by the police. Yet, the Defendant does not deny his presence at the scene. Rather, he offers an alternative explanation of <u>why</u> he was there. According to the Defendant, he was rightfully pursuing collection of a debt. While we certainly do not condone the Defendant's methodology, we must note that an expression of remorse would be entirely inconsistent with the Defendant's version of the events.

In the same vein, it is clear that the lack of "candor" referred to by the prosecutor is the Defendant's denial that he was stalking the victim. However, this Court has stated that a prosecutor may not essentially require a defendant to admit guilt as a prerequisite to favorable consideration for pretrial diversion. <u>See</u> <u>State v. Lane</u>, 56 S.W.3d 20, 29 (Tenn. Crim. App. 2000). It appears that this is exactly what this prosecutor would require in this case. If so, this is improper and an abuse of discretion.

We also note the district attorney general's reliance on the victim's opposition to pretrial diversion as weighing against its grant. This Court has previously held that a victim's opposition to pretrial diversion is not a proper factor for consideration. <u>See, e.g.</u>, <u>State v. Kalid I. Abdulahi</u>, No. 02C01-9707-CR-00280, 1998 WL 538582, at *3 (Tenn. Crim. App., Jackson, Aug. 26, 1998); <u>State v. Christopher Cavnor</u>, No. 02C01-9704-CR-00155, 1998 WL 148320, at *4 (Tenn. Crim. App., Jackson, Mar. 31, 1998). The district attorney general should not have weighed this factor against the Defendant and abused his discretion in so doing.

Finally, the district attorney general weighed "heavily" the need to deter "this particular behavior," citing two recent homicides in the jurisdiction which involved stalking by ex-boyfriends. We acknowledge, of course, that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion," <u>Curry</u>, 988 S.W.2d at 158, but we will uphold a denial on those bases "only if all of the relevant factors have been considered as well." <u>Id.</u> (emphasis deleted). Here, the district attorney general did not properly consider all of the relevant factors, and did consider some irrelevant ones. While the need for general deterrence in cases such as this may be real, the prosecutor's abuses of discretion in analyzing the Defendant's request for diversion prevent us from upholding the denial on this basis.[1]

The State contends in its brief that the "two recent homicides in the jurisdiction involving stalking are of such 'overwhelming significance' as to justify the denial of pretrial diversion," relying on <u>State v. Washington</u>, 866 S.W.2d 950, 951 (Tenn. 1993). The State's contention implies that

---

[1]We also note that the circumstances of this particular offense are not particularly egregious. The record contains no allegation of a weapon or threats against Ms. McClinsey or her children. The record contains no indication that Ms. McClinsey had obtained any sort of restraining order against the Defendant as of May 2004. Perhaps most significantly, the district attorney general did not rely on the circumstances of the offense in denying diversion.

pretrial diversion should be denied in this case because of the nature of the crime itself. We remind the State that our supreme court has indicated that it is improper to deny pretrial diversion to an eligible defendant solely because he or she is charged with a particular offense. See Hammersley, 650 S.W.3d at 356. Accordingly, based on the facts and circumstances of this case, we decline to uphold the district attorney general's decision on this basis.

In sum, we conclude that the district attorney general has not followed the proper guidelines in evaluating the Defendant's request for pretrial diversion. Of particular concern is the district attorney general's refusal to accord any positive weight to the Defendant's lack of a criminal history. This refusal is in and of itself a sufficient abuse of discretion to require a remand under our supreme court's holding in Bell. Moreover, we have noted additional instances reflecting an abuse of discretion in the prosecutor's analysis of the Defendant's request. Accordingly, we hold that the trial court erred in failing to find that the prosecutor abused his discretion in declining to consider evidence favorable to the Defendant and in conducting an analysis using improper criteria. The trial court's ruling is therefore reversed and this case is remanded to the trial court. The trial court shall remand this matter to the district attorney general for further consideration of the Defendant's application for pretrial diversion consistent with the principles and precedents set forth herein.

_____
DAVID H. WELLES, JUDGE