IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2006 Session

## STATE OF TENNESSEE v. DONNIE THOMPSON

**Appeal from the Circuit Court for Madison County**
**No. 04-661   Roger A. Page, Judge**

_____

**No. W2006-00369-CCA-R9-CD  - Filed February 13, 2007**

_____

The appellant, Donnie Glenn Thompson, was indicted on one count of stalking his ex-wife. The appellant applied for pretrial diversion, and this request was denied by the district attorney general. The trial court denied the appellant's petition for writ of certiorari, holding that the district attorney general had not abused his discretion by denying pretrial diversion. This Court accepted the appellant's application for interlocutory appeal and issued a judgment in which we reversed the trial court's decision and remanded the issue for further consideration by the district attorney general. The district attorney general denied the appellant's application for pretrial diversion a second time. The appellant filed a second petition for writ of certiorari, which the trial court again denied. We have accepted the appellant's second application for interlocutory appeal. Because the district attorney general considered the proper criteria when evaluating the appellant's application for pretrial diversion, including evidence favorable to the defendant and because he articulated sufficient grounds for denying the appellant's request for pretrial diversion, we affirm the trial court's conclusion that the district attorney general did not abuse his discretion

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

Mitchell G. Tollison, Jackson, Tennessee, for the appellant, Donnie Thompson.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Jerry Woodall, District Attorney General and James Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 2, 2004, a grand jury indicted the appellant on one count of stalking his ex-wife, Kimberly McClinsey, in violation of Tennessee Code Annotated section 39-17-315. On September 16, 2004, the appellant filed a motion for pretrial investigation and an initial application for pretrial diversion. On November 23, 2004, the district attorney denied pretrial diversion and sent the appellant's counsel a letter outlining the grounds for the denial. The district attorney's decision was ultimately upheld by the trial court after the appellant filed a petition for writ of certiorari. This Court accepted the appellant's application for interlocutory appeal and issued an order reversing the trial court's conclusion that the district attorney had not abused his discretion and remanding the matter to the district attorney general for further consideration. State v. Thompson, 189 S.W.3d 260, 263, 269 (Tenn. Crim. App. 2005).

In this Court's first decision on the appellant's application for pretrial diversion, the Court summarized the facts as follows:

> This case arises out of the Defendant's visit to his ex-wife's residence in May 2004. According to the affidavit of complaint, Ms. Kimberly McClinsey called the police because the Defendant was at her residence and looking in her window. The police responded and, according to the affidavit, "observed [the Defendant] at [the victim's] window outside of her apartment." The victim told the police that the Defendant had previously engaged in this behavior and that she was afraid "for the safety of her children and herself." The Defendant acknowledges that he was at the victim's residence, but contends that he was there in an attempt to get the victim to comply with her legal obligation on a mutual debt.
>
> The Defendant's application for pretrial diversion indicates that he was born in 1949; has a grown son from a previous marriage; attended high school until 1964, at which point he dropped out; has been employed as a truck driver and/or truck owner-operator since 1965; and lived in Henderson, Tennessee, from his birth until 1974, at which time he moved to Jackson, Tennessee, where he has lived ever since. Contained in his application is the following statement of the facts of the alleged offense:
>
> > We were supposed to meet about a Mastercard bill she was supposed to be paying. The Judge ordered her to pay this bill in our divorce. She has paid nothing on this bill. This was the only reason I was there.
>
> In conjunction with the Defendant's request for pretrial diversion, the trial court ordered a pretrial investigation of the Defendant's background. The report prepared following that investigation sets forth the following about the allegations leading to the stalking charge:

On May 11, 2004 at 2145 hours, Officers Yalda and Vanover responded to stalking at 18 Revere Circle # 1 and complaint/victim Kimberly McClinsey advised she had been experiencing her former husband Donnie Thompson stalking her on a couple of occasions by coming to her residence and lying down outside her bedroom window. Ms. McClinsey had filed a report in the past concerning Mr. Thompson stalking her. On this night in particular, Ms. McClinsey saw Mr. Thompson outside her window looking in again. Ms. McClinsey called the police. Officers made the scene and observed Mr. Thompson at Ms. McClinsey's window. Mr. Thompson ran on foot for a short distance, but stopped shortly after yelling [sic] "stop police." Mr. Thompson was arrested for stalking. Mr. Thompson's charges evoked from the calls for police in the past and Ms. McClinsey being in fear for her safety. Each time Ms. McClinsey called the police it was to file a complaint on Mr. Thompson for looking in her window. The couple have been divorced since February of 2004.

The report also indicates that its preparer received no victim statement from Ms. McClinsey. The report further reflects that the Defendant's criminal record consists of five minor traffic offenses.

In addition to his initial application, the Defendant submitted to the prosecutor an additional written statement about the alleged offense. That statement consists of the following:

I totaly [sic] agree on the laws of a person stalking another person. I was not harassing or stalking them. I would never do anything to harm Kim or her daughters in any way. I was over at her house to talk and beg her for some help paying on the G.M. Mastercard bill that Judge Butler ordered her to pay in our divorce. Our divorce was final Feb. 18, 2004. She has paid nothing at all on her bill to help me keep my credit in good standing. A copy of page 4 of the Final Decree is attached. Thanks.

The defendant also provided to the prosecutor twelve very positive letters of reference by long-term friends.

Thompson, 189 S.W.3d at 263-64. Aside from what is mentioned in the affidavit of complaint, neither the State nor the appellant has discovered any record of prior complaints filed by McClinsey against the appellant.

The district attorney sent the appellant's counsel a letter outlining the grounds for his decision to deny pretrial diversion.

I have received your request for this office to consider Donnie Thompson for pretrial diversions [sic]. I have considered your request along with the case file, pretrial diversion report, your client's statement, the numerous letters submitted on behalf of Donnie Thompson together with Mr. Thompson's age, academic record, employment record, criminal history and the need for deterrence. Having considered all these factors and weighed them, I decline to enter into a pretrial diversion agreement with Donnie Thompson.

I place no weight on Mr. Thompson's age either for or against diversion. He is fifty-five years old and of sufficient maturity to appreciate the wrongful nature of his conduct and conform his conduct to society's expectations.

I weigh Mr. Thompson's academic record against diversion but I place only slight weight on this factor. Mr. Thompson dropped out of high school in 1964 and has done nothing to further his education since. I therefore weigh this against diversion.

I place no weight either for or against diversion on Mr. Thompson's criminal history. He has no appreciable record other than minor traffic offenses. Because good citizenship is expected of all people I place no weight on this factor one way or the other.

I place some weight in favor of diversion on Mr. Thompson['s] work record. I am precluded from placing much weight by the lack of detail provided as to exact nature, duties, and earnings during his employment. This office considered the joint tax return but in light of an almost 38 year history a one year tax return really doesn't provide much history. I also note that between 1964 and 1972 there is no evidence of any employment, I therefore weigh this factor with very limited weight.

I have read the numerous letters submitted on behalf of Mr. Thompson. Obviously Mr. Thompson has several people who care for him and are willing to step forward on his behalf. I do give this slight weight in favor of diversion.

I weigh Mr. Thompson's lack of remorse in this matter very heavily and weigh this against diversion.

I weigh Mr. Thompson's lack of candor in this matter very heavily against diversion. Mr. Thompson insists that he was merely attempting to contact the victim in order to get her to help pay for a G.M. master card [sic] bill. This is an absurd attempt to explain away the fact that he has been stalking by the victim's windows, even lying down by them. A fact corroborated by law enforcement observations.

I weigh the need to deter this particular behavior heavily. Jackson has had two homicides this year directly related to ex-boyfriends stalking and killing former companions.

The victim was also interviewed regarding diversion and does oppose diversion. I do give this some weight against diversion as well.

Having considered and weighed the foregoing, I decline to enter into a pretrial diversion agreement with Donnie Thompson and find it is not in the best interest of Mr. Thompson or society.

After the appellant filed a petition for writ of certiorari, the trial court concluded that the district attorney did not abuse his discretion in denying the appellant pretrial diversion. This Court accepted the appellant's interlocutory appeal and a judgment was entered September 19, 2005, reversing the trial court's decision and remanding the case for further consideration by the district attorney. See Thompson, 189 S.W.3d at 269.

This Court concluded that the district attorney failed to consider evidence favorable to the defendant and that he considered improper criteria in reaching his decision. Id. First, the Court found that the letter "fails to explain why the [appellant's] academic history reflects negatively upon his amenability to correction" and concluded that the district attorney "abused his discretion by weighing this factor against the [appellant]." Id. at 266. Second, we concluded that the district attorney's refusal to give any weight to the appellant's lack of serious criminal history was an abuse of discretion. Id. at 266-67. Third, we found that the district attorney's decision to give "'very limited weight' to the [appellant's] near forty-year history of steady employment" was also an abuse of discretion, where the appellant's pretrial diversion application clearly indicates that the appellant "was employed as a truck driver from 1965 to 1972 . . . in Henderson, Tennessee." Id. at 267.

This Court also concluded that the district attorney inappropriately weighed the appellant's lack of candor and lack of remorse "very heavily" because he "obviously does not believe the [appellant's] version of the events leading to his stalking charge." Id. at 267-68. Because the appellant "offers an alternative explanation of why he was [at McClinsey's apartment]," we stated that "an expression of remorse would be entirely inconsistent with the [appellant's] version of the events." Id. at 268. The Court also noted that it would be an abuse of discretion for a district attorney to require an admission of guilt as a prerequisite for pretrial diversion. Id. (citing State v. Lane, 56 S.W.3d 20, 29 (Tenn. Crim. App. 2000)).

In addition to remorse and candor, the Court found that the district attorney had abused his discretion by weighing McClinsey's opposition to pretrial diversion against the appellant. Id. This Court has repeatedly held that a victim's opposition to pretrial diversion is not a proper factor for consideration in assessing an otherwise eligible candidate for the program. Id. (citing State v. Kalid I. Abdulahi, No. 02C01-9707-CR-00280, 1998 WL 538582, at *3 (Tenn. Crim. App., at Jackson, Aug. 26, 1998); State v. Christopher Cavnor, No. 02C01-9704-CR-00155, 1998 WL 148320, at *4 (Tenn. Crim. App., at Jackson, Mar. 31, 1998)).

Because the district attorney did not properly consider all of the factors relevant to the appellant's eligibility for pretrial diversion, this Court also concluded that the denial of pretrial diversion could not be affirmed on a deterrence rationale alone. Id. Finally, we declined to affirm the denial on the basis of the nature of the crime of stalking, noting that "it is improper to deny pretrial diversion to an eligible defendant solely because he or she is charged with a particular offense." Id. (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)).

Following our decision to remand, the district attorney reconsidered the application and again denied the appellant pretrial diversion. He sent the following letter to appellant's counsel on October 5, 2005:

I have reviewed the application of Donnie Thompson for pretrial diversion after the matter was remanded by the Court of Criminal Appeals. It is my opinion that your application should be denied. In reaching this opinion I have considered the case file, pretrial diversion report, Mr. Thompson's statements, the various letters submitted on behalf of your client. I have also considered the age of your client, his academic record, employment history, Mr. Thompson's criminal history, and the need to deter this type of criminal behavior as well as the opinion of the Court of Criminal Appeals.

I again place no weight on Donnie Thompson's age. He was in his mid[-]fifties when this crime occurred. This is certainly an age of sufficient maturity to appreciate the wrongful nature of his conduct. Furthermore, this office prosecutes well over one thousand cases every year. The ages of these defendants vary from their pre-teen years in juvenile court to adults in their eighties. Dozens of these offenders of every age continually violate probation. Age is simply an unreliable factor in determining who will or will not become a repeat offender.

In considering your client's academic record, I note the Court of Criminal Appeals statement, "the failure to complete high school, or any other academic pursuit, is not in and of itself an indicator of a defendant's potential for rehabilitation.["] This office prosecutes many defendants. Many are high school dropouts[;] many have high school diplomas or a G.E.D. Some have a year or two of college or trade school. Some have law degrees or have graduated from pharmacy school. A person's academic achievements are a poor indication of a person's criminal potential.

The same is true of employment status. This office has prosecuted defendants from every walk of life. Many are unemployed, some are underemployed, some are self-employed. This office has prosecuted law enforcement officers, lawyers, store clerks, salesmen, automobile dealers, pharmacists, nurses, and many others. A person's employment history is really no indication of who will or will not continue to violate the law. However, the Court of Criminal Appeals has weighed this factor in favor of diversion. So I must weigh it in favor of Diversion [sic].

I next have considered the defendant's criminal history. The defendant has no prior criminal record and I weigh this in favor of diversion.

I have also considered the numerous letters submitted on behalf of Donnie Thompson and weigh them in favor of diversion.

I have considered the nature of this case and weigh this against diversion. The defendant has a history of harassing or stalking the victim that began in November of 2003. The nature of stalking and harassment goes to the very heart of whether a person will be a repeat offender. While the legislature has determined that stalking qualifies for diversion this does not preclude my consideration that stalking

is not a crime committed out of a sudden heat of passion. In this case Donnie Thompson has stalked or harassed the victim for a seven month period. The continuing nature of a criminal offense over several months is strong indication that Donnie Thompson has the capacity to form the intent to violate the laws of this state and he has the mental capacity to sustain that intent to violate the laws repeatedly and over a period of several months. This capacity to form the intent to commit a crime and the sustained intent to violate the law strongly indicates that he will be a repeat offender. I weigh this factor heavily for the following reason. The Supreme Court has determined that the defendant's, [sic] mental state at the time of the offense is very relevant to the issues of pretrial diversion. In considering the defendant's mental state I noted that the defendant also committed the offense while under an order from the chancellor not [to] molest or harass the victim.[1] The defense only submitted part of the divorce decree. I obtained and reviewed the entire decree. I note that the nature of this crime results from the domestic problem between the defendant and his now ex-wife.

The defendant's employment record and academic record might be entitled to greater weight had this been a crime of economics but it is not. Over the years the problem of domestic violence has escalated in this state and other jurisdictions. At first this office and the lower courts would continue a case involving domestic violence with the intent that the passage of time would resolve the problem between a defendant and victim. This method simply did not work. Today the Jackson City Court, General sessions [sic] Court, Juvenile Court and Chester County General Sessions and Juvenile Court are dealing with the problem of domestic relations by employing trained personnel and experts to help defendants recognize and accept certain changes in their relationship with the victim. Their methods are far more successful in reducing the number of repeat offenders. I point this out for [the] basic reason that a person must recognize the problem and take appropriate steps to deal with the problem or the defendant is more likely to be a repeat offender. Donnie Thompson has simply refused to accept or acknowledge the problem. His lack of remorse makes it more likely that he will be a repeat offender. His refusal to acknowledge the problem makes the likelihood of rehabilitation very poor. I again note that the defendant's version of events is ridiculous. The defendant insists that he was there to get his ex-wife to pay a bill she was ordered to pay by Chancellor Butler. This story simply does not ring true in light of Chancellor Butler's order not to molest or harass one another. The defendant's version in no way explains why he would need to lay down outside her bedroom window to get her to pay a bill as opposed to addressing the matter before Chancellor Butler or why he couldn't call or take the usual method of ringing the doorbell. The defendant's version in no way explains why he felt the need to run from the police and why he had to be ordered to "stop" by police. The defendant's version in no way explains the initial instance of stalking on November 8th, 2003 long before the Chancellor entered his order in February, 2004 and prior to the dissolution agreement entered in December, 2003.

---

[1] The chancellor's order to which the district attorney refers is the parties Marital Dissolution Agreement.

The defendant's version in no way accounts for the instance when he was observed peering in the victim's window at 2:00 in the morning and when confronted on that occasion, gave the excuse that he was there to discuss taxes. The defendant's lack of candor and remorse will greatly undermine any attempt at rehabilitation and make it more likely that he will be a repeat offender. While I am aware that the defendant is not required to admit guilt I am entitled to consider his statement and extremely improbable veracity of such a statement. For this reason stated I do not find the defendant's statement is credible.

I weigh the victim's opposition to diversion against the defendant. The Court of Criminal Appeals stated that this was not a proper factor for consideration and cited State v. Halid I. Abdulah: [sic] No. 02Col[sic]-9797-CR00280 1998 and State v. Christopher Cavnor, No. 02Col[sic]-9704-CR-00155, 1998. I respectfully disagree. The authority cited by the Court of Criminal Appeals predates the victim's rights amendment approved by the voters of this state on November 3, 1998. This amendment expressly confers upon the victim the right to confer with the prosecution and the right to be heard at all critical stages of the criminal justice process. Furthermore T.C.A. 40-38-114 expressly states that the District Attorney shall confer with the victim concerning pretrial diversion. As therefore directed by the legislature and constitution of this state I weigh the victim's opposition to diversion against the defendant.

I further consider the need for deterrence as weighing against diversion. Domestic abuse is an ever increasing problem in this jurisdiction. Our lower courts have numerous domestic crimes filed on their dockets almost on a daily basis. From July 15, 2003 (a date just before the first instance of stalking by this defendant) through the present [t]here have been ten domestic related homicides in this area and as I stated in my previous letter two of these were specifically stalking related by former boyfriends.

Having weighed and considered the foregoing, I find that it is not in the best interest of society on Donnie Thompson to enter into a [p]retrial diversion agreement. I also find that it would not serve the interest of justice to enter into a pretrial diversion agreement with Donnie Thompson.

After receipt of this letter, the appellant once again petitioned the trial court for a writ of certiorari, which was denied on January 10, 2006. On February 13, the trial court issued an amended order which granted the appellant's motion for interlocutory appeal, and this Court granted the appellant's application for interlocutory appeal on March 20, pursuant to Tennessee Rule of Appellant Procedure 9.

## Analysis

The appellant contends that the district attorney's decision to deny pretrial diversion was an abuse of prosecutorial discretion, and he appeals the trial court's judgment denying relief by writ of

certiorari. The appellant also claims that the district attorney was "limited to the original factors and reasons given by him in his first letter refusing to enter into a pretrial diversion agreement" with the appellant. The State contends that there has been no abuse of discretion and that the district attorney properly set out additional reasons for denying the appellant pretrial diversion a second time.

Tennessee Code Annotated section 40-15-105 provides that candidates who satisfy certain criteria may be eligible for pretrial diversion.[2] "The self-evident purpose of pre-trial diversion is to spare appropriately selected first offenders the stigma, embarrassment and expense of trial and the collateral consequences of a criminal conviction." Pace v. State, 566 S.W.2d 861, 868 (Tenn. 1978). Those who are statutorily eligible are not presumptively entitled to diversion; rather, it is extraordinary relief for which the defendant bears the burden of proof. State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999); State v. Baxter, 868 S.W.2d 679, 681 (Tenn. Crim. App. 1993).

The decision to grant pretrial diversion rests within the discretion of the district attorney. Tenn. Code Ann. § 40-15-105(b)(3); see Curry, 988 S.W.2d at 158. The Tennessee Supreme Court has advised that:

> When deciding whether to enter into a memorandum of understanding under the pretrial diversion statute a prosecutor should focus on the defendant's amenability to correction. Any factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered.

Hammersley, 650 S.W.2d at 355. Specifically, district attorneys should consider the following factors:

> [1] circumstances of the offense; [2] the criminal record, social history and present condition of the defendant, including his mental and physical conditions where appropriate; [3] the deterrent effect of punishment upon other criminal activity; [4] defendant's amenability to correction; [5] the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and defendant; and [6] the applicant's attitude, behavior since arrest, prior record, home environment, current drug usage, current alcohol usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude of law enforcement.

---

[2] Under the statute, a "qualified defendant" is one who has not already been granted pretrial diversion; does not have a prior misdemeanor conviction for which a sentence of confinement is served; does not have a prior felony conviction within a five-year period after completing the sentence or probationary program for that prior conviction; and the offense for which the prosecution is being suspended cannot be a Class A or Class B felony, nor can it be certain Class C felonies (certain sexual offenses, driving under the influence of an intoxicant, or vehicular assault). Tenn. Code Ann. §§ 40-15-105(a)(1)(B)(i)(a)-(c).

State v. Markham, 755 S.W.2d 850, 852-53 (Tenn. Crim. App. 1988); see also State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (quoting Markham but excluding "current alcohol usage").

Although an important factor for consideration, "[t]he focus on amenability to correction is not an exclusive one." State v. Carr, 861 S.W.2d 850, 855 (Tenn. Crim. App. 1993). Deterrence of both the defendant and others is also a proper factor to consider. Hammersley, 650 S.W.2d at 354. In fact, the circumstances of the crime and the need for deterrence may outweigh other applicable factors and justify the denial of pretrial diversion. State v. Lutry, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996); Carr, 861 S.W.2d at 855. The district attorney's analysis must be conducted "on a case-by-case basis, assigning due significance to all relevant factors." Markham, 755 S.W.2d at 853. Accordingly, "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." Curry, 988 S.W.2d 153, 158 (Tenn. 1999) (emphasis in original).

When denying an application for pretrial diversion, the district attorney must clearly articulate the specific reasons for denial in the record in order to provide for meaningful appellate review. Hammersley, 650 S.W.2d at 355. However, the Supreme Court has provided that a district attorney's consideration of all of the relevant factors must:

> [E]ntail[] more than an abstract statement in the record that the district attorney general has considered these factors. He must articulate why he believes a defendant in a particular case does not meet the test. If the attorney general bases his decision on less than the full complement of factors enumerated in this opinion he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration.

State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989). The district attorney's decision must be formal and written. State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993). See also State v. Bell, 69 S.W.3d 171, 178 (Tenn. 2002) (reiterating "the well-established rule that the district attorney general, when denying pretrial diversion, must consider all relevant factors, including evidence favorable to the defendant, must weigh each factor, and must explain in writing how the decision to deny pretrial diversion was determined").

Unsuccessful applicants can request review of a district attorney's decision to deny pretrial diversion by filing a petition for a writ of certiorari. Tenn. Code Ann. § 40-15-105(b)(3). The district attorney's decision to grant or deny pretrial diversion is presumptively correct and shall be reversed only when the appellant establishes that there has been an abuse of prosecutorial discretion. Curry, 988 S.W.2d at 158. At the certiorari hearing, the trial court is only allowed to consider evidence that the district attorney considered in making his decision to deny pretrial diversion. Id. at 157; Winsett, 882 S.W.2d at 810. The trial court may conduct a hearing to resolve any factual disputes raised by the district attorney or the applicant, but not to hear additional evidence that the district attorney did not consider. Curry, 988 S.W.2d at 157-58.

In order to establish an abuse of discretion, the record must show an absence of any substantial evidence to support the district attorney's refusal to grant pretrial diversion. Hammersley, 650 S.W.2d at 356; see also Bell, 69 S.W.3d at 179 (holding that the district attorney's decision must be supported by substantial evidence). Therefore, in a close case where the district attorney could have legitimately granted or denied the application, the trial judge must defer to the judgment of the district attorney. Carr, 861 S.W.2d at 856.

On appellate review of the trial court's judgment in a diversion case, the trial court's findings of fact are binding on an appellate court unless the evidence preponderates against those findings. Lutry, 938 S.W.2d at 434. Therefore, we review to determine whether the trial court's decision is supported by a preponderance of the evidence. Curry, 988 S.W.2d at 158; State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997). When reviewing a denial of pretrial diversion, this Court may not substitute its judgment for that of the district attorney, even if we would have preferred a different result. State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995).

The issue before this Court certainly constitutes a close case. When we considered the trial court's judgment concerning the district attorney's first decision to deny pretrial diversion, we remanded with instructions that the district attorney consider the appropriate criteria outlined in Tennessee case law, including evidence favorable to the appellant. See Thompson, 189 S.W.3d at 269. However, contrary to the appellant's argument, the Court's decision to remand in no way limited the district attorney to reliance on the factors that he noted in the first letter. Indeed, the Court itself requested that the district attorney address additional criteria when he reconsidered the issue upon remand.

We note that a rule which limits district attorneys to consideration of only the original factors would inappropriately hinder their ability to account for changed circumstances. For example, if the appellant had been charged with an additional offense in the interim, or had otherwise conducted himself in a manner weighing against a pretrial diversion agreement, the district attorney would, and ought to, be free to consider those additional factors. The Tennessee Supreme Court has specifically recommended that district attorneys consider "the applicant's . . . behavior since arrest." Markham, 755 S.W.2d at 853. If circumstances were to change between the initial application and reconsideration of the case after remand, limiting the district attorney to the grounds outlined in the first letter would function contrary to society's interest in ensuring that only those individuals that truly satisfy the criteria for pretrial diversion are considered for relief.

Turning to the content of the district attorney's second letter, in light of the principles and precedents set forth in our earlier decision we determine that the district attorney has met the minimum criteria necessary to justify the trial court's deference to his decision to deny the appellant pretrial diversion.

The district attorney considered evidence that generally weighs in favor of pretrial diversion, including the appellant's lack of criminal history, as well as the letters submitted by friends and

family. Although he did so with obvious reluctance, he also weighed the appellant's employment history in favor of diversion.

In the initial appeal, we found that the district attorney "fail[ed] to explain why the Defendant's academic history reflects negatively upon his amenability to correction." Id. at 266. Specifically, we concluded that it was an abuse of discretion to weigh this factor against diversion. Id. However, in his second letter, the district attorney satisfactorily explained why academic record, in this case, was insufficient to indicate the appellant's potential for rehabilitation. He did not weigh this factor determinatively against pretrial diversion. The district attorney did not abuse his discretion in his consideration of the appellant's academic history.

After considering the second letter, we also conclude that the district attorney's discussion of the appellant's lack of candor and lack of remorse was not an abuse of discretion. Contrary to the appellant's contention, we do not find that the district attorney's letter requires an admission of guilt as a condition of favorable consideration of the appellant's application for pretrial diversion. Put simply, there is no requirement that a district attorney accept an applicant's version of the events in question. Based upon his review of the record, the district attorney concluded that the appellant's account was not plausible.

As outlined above, upon review of the district attorney's denial of pretrial diversion the trial court is instructed to determine "whether there is substantial evidence to support" the district attorney's decision. Hammersley, 650 S.W.2d at 356; Bell, 69 S.W.3d at 179. In the appellant's investigation report, the affidavit of complaint prepared by Jackson police officers states that McClinsey was stalked by the appellant in the past. It also states that she filed complaints with Jackson police on at least some of these prior occasions. The district attorney relied on this record when considering the appellant's application. Based upon this information, he believed the appellant's lack of candor to weigh heavily against the appellant's amenability to rehabilitation.

The trial court was likewise only able to rely on the record to determine the factual basis for the district attorney's decision. While the appellant offers an alternative explanation for his presence at McClinsey's residence on the evening of his arrest, we are bound by the trial court's findings of fact in the absence of evidence that preponderates against those findings. Accordingly, we defer to the trial court's judgment that the district attorney based his decision upon substantial evidence in the record.

We also conclude that the district attorney did not deny pretrial diversion simply because the appellant's indictment was for stalking. Such a denial, based solely on the nature of the crime itself, is forbidden by Tennessee case law. See Hammersley, 650 S.W.2d at 357. However, the district attorney emphasized the circumstances surrounding this alleged crime as a part of his consideration of deterrence grounds for denying pretrial diversion, as well as his skepticism about the appellant's capacity for rehabilitation. Specifically, he considered the allegation of repeated harassment as stated in the affidavit of complaint, as well as his general concerns about stalking and domestic-related homicides in his district.

In fact, perhaps most significant about the district attorney's second letter is his explanation of the deterrence grounds for denying pretrial diversion. It is worth emphasizing that by requiring district attorneys to weigh certain criteria in favor of an applicant, the courts do not demand that such positive factors always overcome those that weigh decidedly against a grant of pretrial diversion. As we stated in our review of the first letter of denial:

> Here the district attorney general did not consider all of the relevant factors, and did consider some irrelevant ones. While the need for general deterrence in cases such as this may be real, the prosecutor's abuses of discretion in analyzing the Defendant's request for diversion prevent us from upholding the denial on this basis.

Thompson, 189 S.W.3d at 268. By no means did this conclusion preclude the district attorney from denying the appellant pretrial diversion on a deterrence basis; rather, it simply required that he consider all of the relevant factors before doing so. After conducting an inclusive and proper analysis, the district attorney was free to exercise his discretion, consistent with Tennessee law, to decide that the public's interest in deterrence outweighed other factors. See Curry, 988 S.W.2d at 158; Markham, 755 S.W.2d at 853. The district attorney was required to "articulate why he believes [the appellant] does not meet the test" for pretrial diversion. Herron, 767 S.W.2d at 156. We conclude that he sufficiently met this burden and that his decision that the public's interest in deterrence weighs decisively against granting the appellant pretrial diversion was not an abuse of discretion.

## Conclusion

Because the district attorney general considered the proper criteria when evaluating the appellant's application for pretrial diversion, including evidence favorable to the defendant, and articulated sufficient grounds for denying the appellant's request for pretrial diversion, we affirm the trial court's judgment that the district attorney did not abuse his discretion.

_____
JERRY L. SMITH, JUDGE

-13-