IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2009 Session

## STATE OF TENNESSEE v. KENNETH ROSS JACKSON

**Direct Appeal from the Criminal Court for Hamilton County**
**Nos. 267283, 269828      Don W. Poole, Judge**

---

**No. E2009-00852-CCA-R3-CD - Filed May 13, 2010**

---

The defendant, Kenneth Ross Jackson, appeals the denial of judicial diversion from the Hamilton County Criminal Court. He entered pleas of guilty to theft of property in excess of $1000, a Class D felony; filing a false report to a law enforcement officer, a Class D felony; and theft of property under $500, a Class A misdemeanor. He was sentenced as a Range I offender to concurrent terms of two years, suspended to supervised probation for both Class D felony convictions. He was sentenced to a concurrent term of eleven months and twenty-nine days on unsupervised probation for the Class A misdemeanor. On appeal, the defendant contends that he was improperly denied judicial diversion. After careful review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Robin Ruben Flores, Chattanooga, Tennessee, for the appellant, Kenneth Ross Jackson.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William H. Cox, III, District Attorney General; and Cameron B. Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant participated in two separate incidents that resulted in his indictment for the commission of three crimes. On December 7, 2007, the defendant, who was employed as a manager at McDonald's, participated in taking $2400 from the restaurant and then filed

a false report about the incident. The defendant exchanged text messages with his co-defendants, who were also employees of the restaurant, and they planned a staged robbery. One employee left the restaurant's back door open, and two men entered it and took the money from the defendant while brandishing a gun. When the police arrived, the defendant falsely reported that he was robbed at gunpoint. He was indicted for these crimes on February 20, 2008.

On July 25, 2008, while on bond for the crimes committed on December 7, 2007, the defendant was involved in shoplifting from a Sears store. The facts introduced during the guilty plea hearing demonstrated that the defendant and another person were observed entering a fitting room and removing tags from merchandise. They walked past the "points of sale" and attempted to exit the store when they were taken into custody by the store's loss prevention agents. The total value of the items was $124.53.

The defendant entered guilty pleas to the charges on November 20, 2008. It was announced by the State's attorney that the only stipulation in the entry of the guilty pleas was that the sentences would run concurrently. The length and the manner of service of the sentences, in addition to the issue of judicial diversion, would be determined at the sentencing hearing.

Officer Brian Moseley, of the Chattanooga Police Department, testified during the sentencing hearing on March 16, 2009, that he was an investigator at the time the incident occurred at McDonald's. He testified that he responded to a robbery call at 11:16 p.m. on December 7, 2007. He interviewed the employees at the restaurant, including the defendant who was the manager on duty. The defendant told Moseley that he was counting money after the restaurant closed when two men entered and held a gun to his head. Moseley also spoke to the other employees who were on the scene.

After talking with the co-defendants, Officer Moseley testified that he determined this was not an armed robbery. He developed the co-defendants as suspects after a district manager for McDonald's recognized the car used in the getaway. The co-defendants implicated the defendant. Moseley also discovered that text messages were exchanged that showed the defendant knew what was to happen at the restaurant. The police only recovered $500 of the estimated $2400 taken from the restaurant.

The police recovered a BB gun and concluded that there was never any intention for harm during the staged robbery. The police were unable to determine the "ringleader" of the crime.

Next, the defendant testified that he was not involved in the robbery of McDonald's and that he did not steal shoes from the Sears store. On cross-examination, he testified that he was counting the money at McDonald's when a man wearing a red hooded sweatshirt entered the restaurant. He testified that he had no indication that a robbery would occur. He acknowledged that he did not tell the police that he recognized the car used in the escape.

The defendant testified that he did not shoplift at Sears and, specifically, that he did not remove tags from clothing. However, he did acknowledge that he left the store with merchandise that he did not purchase.

The trial court took a recess for the defendant to retrieve his pay stubs from his car to verify his current employment. The defendant left the courthouse, and an officer saw him leave in his vehicle.

The defendant testified when the sentencing hearing resumed on April 20, 2009. During this hearing, he acknowledged his part in the shoplifting incident and that he knew about the theft before it took place. He also acknowledged his participation in the theft at McDonald's but said that he did not think his co-defendants would follow through with the robbery. He testified that he was now employed at a different restaurant and that he was enrolled in college.

The State objected to the defendant's being placed on judicial diversion because of the defendant's involvement in the theft at Sears while he was on bond for the crime at McDonald's. The State further cited the defendant's lack of candor at the first sentencing hearing, where he denied all involvement in the crimes.

In sentencing the defendant, the trial court was troubled that the defendant initially testified that he did not commit the crimes before he reconsidered and acknowledged his involvement. The trial court placed little weight on the defendant's prior criminal history because he had a single Class C misdemeanor conviction. However, the trial court did consider that the defendant was in a position of private trust as a manager of the restaurant. The court also considered that there was one mitigating factor, that the defendant's criminal conduct did not threaten serious bodily injury.

The trial court concluded that the defendant was eligible for judicial diversion and specifically stated that, had the defendant been before the court for only one incident, the court "would look long and hard at granting judicial diversion." However, the trial court denied diversion because the defendant committed the theft at Sears eight months after the first crime, when he should have been doing everything in his "power not to violate the law

again." The trial court seemed to be troubled over the fact that this defendant committed another crime while he was on bond.

The trial court denied judicial diversion and sentenced the defendant as a Range I offender to concurrent terms of two years, suspended to supervised probation for both Class D felony convictions. He was sentenced to a concurrent term of eleven months and twenty-nine days on unsupervised probation for the Class A misdemeanor.

Analysis

On appeal, the defendant argues that the trial court did not properly consider all the factors in denying his application for judicial diversion. He contends that the trial court placed too much emphasis on the second theft, which occurred while the defendant was on bond for the first theft.

The decision to grant or deny a request for judicial diversion lies within the sound discretion of the trial court. *See State v. Harris*, 953 S.W.2d 701, 705 (Tenn. Crim. App. 1996). Accordingly, the trial court's decision regarding diversion will not be disturbed on appeal absent an abuse of that discretion. *See State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *State v. Hammersley*, 650 S.W.2d 352, 356 (Tenn. 1983)). Discretion is abused if the record contains no evidence to support the denial of judicial diversion. *See State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting *Hammersley*, 650 S.W.2d at 356). When a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Electroplating, Inc.*, 990 S.W.2d at 229; (citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); *Hammersley*, 650 S.W.2d at 356).

In determining whether to grant judicial diversion, the trial court must consider:

(a)   the accused's amenability to correction,
(b)   the circumstances of the offense,
(c)   the accused's criminal record,
(d)   the accused's social history,
(e)   the accused's physical and mental health,
(f)   the deterrence value to the accused as well as others, and
(g)   whether judicial diversion will serve the interests of the public as well
      as the accused.

*Parker*, 932 S.W.2d at 958; *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993). Moreover, the record must reflect that the court has weighed all of the factors in reaching its

determination. *Bonestel*, 871 S.W.2d at 168. The court must explain on the record why the defendant does not qualify under its analysis, and, if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id.; State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998).

In the instant case, the defendant was convicted of two Class D felonies and one Class A misdemeanor. Because he has no prior felony or Class A misdemeanor convictions, the defendant is a candidate for judicial diversion. *See* T.C.A. § 40-35-313(a)(1)(B)(i).

Following a sentencing hearing, the trial court set out its reasons for denying judicial diversion on the record. The trial court noted that the defendant's criminal record was limited to a Class C misdemeanor. The trial court also found that the defendant had a favorable social history. The trial court noted that even though the defendant admitted some involvement with the use of marijuana, his overall physical and mental background was good. The trial court noted that the deterrence value was important in this case, particularly with regard to the defendant's being employed in a position of trust and his violation of that trust. The trial court would likely have granted judicial diversion had the defendant been before the court only for the incident at McDonald's.

In denying judicial diversion, the trial court placed great emphasis on the facts that the defendant committed a second theft while he was on bond approximately eight months after the McDonald's theft and on the defendant's lack of candor during the first portion of the sentencing hearing. During the first sentencing hearing on March 16, 2009, the defendant testified that he had no involvement in either theft. The defendant left the courthouse during a recess and caused the hearing to be postponed until April 20, 2009. When the sentencing hearing resumed, the defendant acknowledged part of his role in the thefts but still minimized his participation in the McDonald's theft.

It has been widely held that a defendant's truthfulness while testifying on his own behalf is probative of his attitudes toward society and his prospects for rehabilitation and, therefore, is a relevant factor in the sentencing process. *See, e.g. U.S. v. Grayson*, 438 U.S. 41 (1978); *Williams v. New York*, 337 U.S. 241 (1949); *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983). We have held that a defendant's credibility and willingness to accept responsibility for an offense are circumstances relevant to determining his rehabilitation potential. *State v. Anderson*, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992). "It is unrealistic to assume that someone who has just pled guilty to a felony conviction, who then denies any criminal wrongdoing for the offense for which they have just pled, and is in general unrepentant is someone who could immediately return to their community and be expected to assume a role as a functioning, productive and responsible member of society." *State v. Dowdy*, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994).

Our review reflects that the trial court properly considered the relevant factors and explained its reasoning for denying judicial diversion. Therefore, we conclude that no error exists with the trial court's denial of judicial diversion, and we have no issue with the weight the trial court placed on the fact that the defendant committed the second crime while he was on bond for the first offenses. We note our legislature has expressed disfavor for people committing felonies while on bond by providing for enhanced punishment and requiring consecutive sentences. *See* T.C.A. §§ 40-35-114(13)(A), 40-20-111(b).

Because the second theft was a misdemeanor, the enhanced and consecutive sentencing provisions were not triggered. However, the trial court's denial of judicial diversion was justified in part by the defendant's committing a crime while on bond for the commission of other offenses.

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE