# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 21, 2011

## STATE OF TENNESSEE v. MARILYN SESLER

**Appeal from the Circuit Court for Dickson County**
**No. 2008-CR-478      Robert E. Burch, Judge**

---

**No. M2010-01930-CCA-R3-CD-Filed September 21, 2011**

---

The Defendant, Marilyn Sesler, was convicted by a Dickson County Circuit Court jury of making a false report, a Class D felony. See T.C.A.§ 39-16-502(a) (2010).  The trial court sentenced the Defendant as a Range I, standard offender to two years' probation.  On appeal, the Defendant contends that the evidence was insufficient to support her conviction and that the trial court erred by failing to consider and make appropriate findings when rejecting judicial diversion.   We affirm the Defendant's conviction, but we remand for resentencing consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded.**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

William B. Lockert, III, District Public Defender, and Lila Kathleen Mitchell, Assistant District Public Defender, for the appellant, Marilyn Sesler.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Timothy Peters, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to a police report involving an encounter between the Defendant and George Burnett.  At the trial, Dickson Police Officer Jessica Blackwell testified that she responded to a call placed by the Defendant regarding Mr. Burnett's violation of his bond restrictions and an order of protection.  She met with the Defendant and was informed by the Defendant that Mr. Burnett was ordered to have no contact with the Defendant after an

incident of domestic abuse. She said the Defendant told her that Mr. Burnett pulled his truck beside the Defendant while she was at a McDonald's restaurant, that Mr. Burnett waved at the Defendant in an attempt to speak with the her, and that the Defendant held her hand up to stop Mr. Burnett and left the restaurant. Officer Blackwell said that she filed a report based on the information the Defendant provided and that a person who violated a bond restriction typically was arrested.

Jason Cockran testified that he was the store manager at the McDonald's where the incident between the Defendant and Mr. Burnett occurred and that video surveillance cameras recorded the incident. The video recordings were played for the jury. On cross-examination, Mr. Cockran testified that Mr. Burnett's sister previously dated the owner of the McDonald's.

George Burnett testified that on March 6, 2008, he was buying lunch in the drive-through lane of a McDonald's restaurant when the Defendant pulled beside his truck in the second drive-through lane, honked her horn, and yelled at him to roll down his window. He said he bought his food and left. He said he did not follow the Defendant to the restaurant.

On cross-examination, Mr. Burnett testified that he did not lean toward or wave at the Defendant in an attempt to get her attention. He agreed the Defendant raised her hand but said she did not gesture in a motion indicating that he should stop. He agreed the Defendant did not remain at the restaurant to speak with him.

Margaret Sage testified that she was an Assistant District Attorney and that she worked primarily on domestic violence cases. She said the Defendant was the victim in a previous case involving Mr. Burnett. She said that in early March 2008, the Defendant came to her office and asked to speak about an incident that occurred earlier that day. The Defendant was "extraordinarily upset" and informed Ms. Sage that Mr. Burnett attempted to contact her at a McDonald's on Mathis Drive. She said the Defendant stated that she was ordering food when Mr. Burnett drove next to her car and "frantically" waved in an attempt to have the Defendant roll down her window and speak with him. The Defendant informed Ms. Sage that she immediately left the restaurant and reported the incident to the police. Ms. Sage said the Defendant stated that this was not the first time Mr. Burnett violated his bond restriction, that she was upset because "nobody ever did anything" about Mr. Burnett's violations, and that she previously attempted to inform a magistrate of Mr. Burnett's actions. Ms. Sage said that a person who violates a bond condition is normally arrested and placed in jail for ten days and that she filed a motion to revoke Mr. Burnett's bond after the Defendant affirmed that her statement was truthful.

Ms. Sage testified that on March 14, 2008, a hearing was scheduled to determine whether Mr. Burnett violated his bond conditions but that the hearing was postponed after she learned the restaurant had video footage of the incident. She said the Defendant became upset when the hearing was postponed and stated that Mr. Burnett was "getting away with everything again" and that she was concerned someone had tampered with the surveillance video. Ms. Sage said she withdrew the motion to revoke Mr. Burnett's bond after she viewed the surveillance video and determined that it would be an ethical violation for her to put "false evidence" before the court.

On cross-examination, Ms. Sage testified that the hearing on March 14, 2008, was postponed to allow the State and Mr. Burnett's defense counsel to review the surveillance footage. She did not recall seeing Mr. Burnett's face on the recording and disagreed that most victims flee the scene after encountering someone who previously hurt them.

David Hicks testified that he worked for the District Attorney's Office. He said that he spoke with the Defendant about the incident at the restaurant and that she reported to the police that Mr. Burnett pulled into the restaurant after her and yelled at her. Mr. Hicks said that after he and the Defendant viewed the surveillance footage together, she stated that she panicked when she saw Mr. Burnett and that she thought the incident occurred as she reported it to the police. He said the Defendant left when he told her that Mr. Burnett was arrested due to her incorrect report. On cross-examination, Mr. Hicks agreed that Mr. Burnett was not arrested based on the Defendant's report and instead was issued a summons.

The Defendant testified that she drove to the McDonald's after submitting paperwork at the District Attorney's Office related to a previous incident when Mr. Burnett beat her, left her on a dirt road, took her telephone, and forced her to walk home. She said she did not notice Mr. Burnett at the restaurant until she entered the outer drive-through lane and saw a truck in the adjacent lane with "Burnett Electric" written on the side. She said she had not seen Mr. Burnett since the previous incident. She said that Mr. Burnett honked his horn and attempted to obtain her attention and that she panicked and began screaming, "you're not supposed to be here." She said that she drove away after "waving him off" and that she contacted the police. The Defendant made an offer of proof outside the hearing of the jury in which she described an incident in 1993 when Mr. Burnett pled guilty to property destruction after vandalizing two of her cars and an incident in 2007 when Mr. Burnett beat her, told her she would die that night, and left her on a dirt road.

On cross-examination, the Defendant testified that she called 9-1-1 after encountering Mr. Burnett at the McDonald's. She said that she was hysterical and that she felt there was an emergency. She said that she thought Mr. Burnett followed her to the restaurant and that she did not intentionally follow him to the restaurant. She agreed she initially pulled in

behind Mr. Burnett's truck and said she pulled into the lane beside Mr. Burnett because she thought there were several cars in front of him in his lane. She said that although the video recording showed no cars in front of Mr. Burnett, she remembered the incident differently. She denied that she honked her horn and gestured to Mr. Burnett but agreed that she screamed in her car.

The Defendant agreed that she had not viewed the surveillance footage before Mr. Burnett's bond violation hearing on March 14, 2008, and testified that she asked Mr. Hicks whether someone could have tampered with the video because Mr. Burnett's sister dated the owner of the restaurant. She said that after she watched the video recording with Mr. Hicks and Ms. Ruff, Ms. Ruff stated that it was obvious the Defendant panicked when she saw Mr. Burnett. On redirect examination, the Defendant testified that her windows were up when she yelled in her car.

Upon this evidence, the jury found the Defendant guilty of making a false report. The trial court sentenced the Defendant as a Range I, standard offender to two years' probation. This appeal followed.

# I

The Defendant contends that the evidence was insufficient to support her conviction because it did not establish that she knowingly filed a false report. She argues that she assumed Mr. Burnett was trying to have contact with her and that she perceived a threat from Mr. Burnett and reported it to the police. The State argues that the evidence was sufficient to support the Defendant's conviction. We agree with the State.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This means that we may not reweigh the evidence but must presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Any questions about the credibility of the witnesses were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Pertinent to this appeal, it is a criminal offense for a defendant to initiate a report or statement to a law enforcement officer concerning an offense or incident within the officer's concern, knowing that the offense or incident did not occur or that the information relating to the offense is false. See T.C.A. § 39-15-502(a)(1). "[A] person acts knowingly with

respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-106(a)(20) (2006) (amended 2009). "A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Id.

Taken in the light most favorable to the State, the record reflects that the Defendant followed Mr. Burnett into a McDonald's drive-through. Although she initially sat behind Mr. Burnett, she later moved her car beside his truck. Mr. Burnett testified that the Defendant honked her horn, yelled at him to roll down his window, and then left. Mr. Burnett said he did not lean toward or wave at the Defendant in an attempt to get her attention. Officer Blackwell testified that she was informed by the Defendant that Mr. Burnett pulled his truck along side the Defendant while she was at a McDonald's restaurant and that Mr. Burnett waved at her in an attempt to speak. Officer Blackwell said she filed a report based on the information the Defendant provided. Ms. Sage testified that the Defendant informed her that Mr. Burnett drove next to her car and "frantically" waved in an attempt to have the Defendant roll down her window and speak with him. The Defendant informed Ms. Sage that this was not the first time Mr. Burnett violated his bond restriction and that she was upset because "nobody ever did anything" about Mr. Burnett's violations. Ms. Sage filed a motion to revoke Mr. Burnett's bond but withdrew the motion after she viewed the surveillance video and determined that the Defendant's statement was false. Regardless of whether the Defendant perceived a threat from Mr. Burnett, the record reflects that she knowingly gave a false account of her encounter with Mr. Burnett and affirmed to authorities that her statement was accurate.

We conclude that a rational trier of fact could have found the elements of making a false report beyond a reasonable doubt. We hold that the evidence is sufficient to support the Defendant's conviction.

**II**

The Defendant contends that the trial court erred by failing to consider appropriate factors or make findings in support of denying judicial diversion. The State concedes that the trial court did not consider the necessary factors in evaluating the Defendant's request for judicial diversion and that the record is inadequate for appellate review. We hold that the trial court's failure to make findings and consider the necessary factors in evaluating the Defendant's request for judicial diversion renders the record inadequate for appellate review and we remand for resentencing.

A defendant is eligible for judicial diversion if he or she is found guilty of or pleads guilty or nolo contendere to a Class C, D, or E felony or a lesser crime, has not previously been convicted of a felony or a Class A misdemeanor, and is not seeking deferral for a sexual offense. See T.C.A. § 40-35-313(a)(1)(B)(I) (2010). The decision to grant judicial diversion lies within the sound discretion of the trial court, and this court will not disturb that decision on appeal absent an abuse of discretion. State v. Electroplating, Inc., 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998). Upon review, we will give the trial court the benefit of its discretion if "'any substantial evidence to support the refusal' exists in the record." State v. Anderson, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992) (quoting State v. Hammersley, 650 S.W.2d 353, 356 (Tenn. 1983)).

In determining whether to grant judicial diversion, the trial court must consider (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; (6) the deterrence value to the defendant and others; and (7) whether judicial diversion will serve the ends of justice. Electroplating, 990 S.W.2d at 229; State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). In addition, "the record must reflect that the court has weighed all of the factors in reaching its determination." Electroplating, 990 S.W.2d at 229. If the trial court refused to grant judicial diversion, it should state in the record "the specific reasons for its determinations." Parker, 932 S.W.2d at 958-59. Appellate review is precluded if the trial court fails to make findings in support of its determination regarding judicial diversion. See State v. Lewis, 978 S.W.2d 558, 566-67 (Tenn. Crim. App. 1997); State v. Kevin Spurling, No. E2008-02599-CCA-R3-CD, Roane County, slip op. at 4 (Tenn. Crim. App. Feb. 8, 2010).

At the sentencing hearing, the Defendant testified that she received disability payments and that she took several medications for depression and panic attacks. She said she was diagnosed with depression and anxiety. She said that Mr. Burnett vandalized two of her cars in 1993 and was convicted for the offenses and that in 2007, Mr. Burnett beat her, broke the rear windshield of his car by smashing her head into it, and told her that she would die. She identified photographs of the injuries she received from Mr. Burnett. She said that Mr. Burnett "petrified" her and that she had a panic attack when she saw him at the restaurant. She said she called the police because they instructed her to call if Mr. Burnett came near her. She said that she was sorry and that she did not intentionally break the law. She said she would comply with all conditions of probation or diversion. She agreed that between the trial and the sentencing hearing, she was charged with domestic assault but said the judge informed her that the case would be dismissed if she paid court costs before May 19, 2010. On cross-examination, the Defendant testified that there was no charge pending against her at the time of the sentencing hearing and that the assault charge resulted from an incident involving her sister.

The trial court found no enhancement factors applicable but found mitigating factor (13) applicable because the Defendant's actions were consistent with her diagnosis of depression and anxiety. See T.C.A. § 40-35-113(13) (2010). The trial court found that the possibility of the Defendant re-offending was great. In denying judicial diversion, the trial court stated, "the Court finds that she does not qualify and even if she did, she would not be a good candidate for judicial diversion. If for no other reason she needs this conviction on her record because if she does it again I'm going to fall [sic] her."

We note that the Defendant was found guilty of a Class D felony and that the record reflects that she has not previously been convicted of a felony or a Class A misdemeanor, thus making her eligible for judicial diversion. See T.C.A. § 40-35-313(a)(1)(B)(I). We hold that the trial court's failure to consider the necessary factors in evaluating the Defendant's request for judicial diversion and its failure to make sufficient findings when denying judicial diversion renders the record inadequate for appellate review. On remand, the trial court should consider all appropriate factors and place its findings on the record.

In consideration of the foregoing and the record as a whole, the Defendant's conviction is affirmed, but we remand for resentencing consistent with this opinion.


_____
JOSEPH M. TIPTON, PRESIDING JUDGE