IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 12, 2015 Session


STATE OF TENNESSEE v. SUSAN GAIL STEPHENS


Appeal from the Circuit Court for Coffee County
No. 35,064F     Vanessa Jackson, Judge

—————————

No. M2014-01270-CCA-R9-CD – Filed July 7, 2015

—————————


In this interlocutory appeal, Susan Gail Stephens ("the Defendant") challenges the prosecutor's denial of her application for pretrial diversion. She asks this court to remand the case to the prosecutor with instructions that the Defendant be granted pretrial diversion. She also asks us to instruct the prosecutor to grant pretrial diversion nunc pro tunc to the Defendant's 2012 update to her application for pretrial diversion. Upon review, we find that there is no substantial evidence in the record to support the denial of pretrial diversion. Accordingly, we reverse the order of the trial court and remand the case to the trial court with instructions that the Defendant be granted pretrial diversion upon the terms and conditions of the diversion to be established by the trial court. However, we decline to instruct that pretrial diversion be granted nunc pro tunc to 2012.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed and Case Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Edward M. Yarbrough and J. Alex Little, Nashville, Tennessee, for the Appellant, Susan Gail Stephens.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Craig Northcott, District Attorney General; and Jason M. Ponder, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

This is the third time this case has been appealed to this court from a denial of pretrial diversion. In the first appeal, we summarized the facts as follows:

> The record in this case contains two recitations of the facts. In her pretrial diversion application, the Defendant recounted the facts as follows:

>> On February 24, 2006, I was with [the victim] and other teenagers in my car in the Eaves' driveway and they had alcoholic beverages. They appeared to be intoxicated. The next night, Saturday, February 25, 2006, I was at the home of Chris and Kelly Eaves when the teenagers were again present and were drinking. I drank some beer and probably this is what caused me to lose my normal inhibitions and led to what happened later.

>> My memory of the exact events is hazy. However, I know that I became physically involved with [the victim] and we had intercourse. I am very sorry for what I did. This event has had a devastating effect on me and my family. I immediately went to seek treatment with a counselor. I did this even before I got a call from the investigator. The therapist is helping me understand why this happened and is helping me to prevent anything like this from happening in the future.

> The State compiled a more detailed account of the relevant events in its memorandum denying pretrial diversion. According to the State, the circumstances of the offense are as follows:

>> Officers with the Tullahoma Police Department began receiving information and complaints about the Defendant and her friend (codefendant Kelley Renee Eaves) in late 2005 and early 2006. The complaints were in reference to the Defendant and Eaves hosting parties for high school students in the Eaves' home at 421 Albermarle Drive in Tullahoma. Several parents and students reported that defendants Eaves and Stephens allowed numerous boys into the home to consume alcohol and smoke cigarettes. Also, the defendants

would consume alcohol, dance and act inappropriately with the boys. Complaints also came in that the women would drive around town in the Defendant's vehicle with their daughters and act inappropriately with the high school boys.

Upon investigation, Officer Joe Brown with the Tullahoma Police Department found that the defendants each had a 14 year-old daughter that was allowed to date a 17 year-old boy. Apparently the boys were then encouraged to come to the Eaves house and invite their friends to join the festivities. During these parties, the Defendant and Eaves would allow the high school boys to drink beer and smoke cigarettes. Although they deny giving beer to the boys, witnesses report that it was freely available and further, both defendants admit they knew the boys were drinking.

On or about February 18, 2006, during one of these "parties," the Defendant, Susan Stephens began her pursuit of the minor victim in this case . . . by kissing and fondling him. [The victim], a 17 year-old high school student would attend the parties and become intoxicated. He and the Defendant would speak on the phone, exchange text messages and see each other at the parties.

On February 24, 2006, the Defendant again met [the victim] at the Eaves home in Tullahoma. Again, [the victim] had been drinking and the Defendant made sexual advances toward him[.]

It should be pointed out that the [sic] both defendants' 14 year-old daughters were present during these parties with their respective 17 year-old boyfriends. Their boyfriends were also allowed to consume alcohol although both defendants deny their daughters consumed any themselves.

On February 25, 2006, the Defendant and Eaves hosted another "party." Witnesses report that [the victim] along with several other boys were intoxicated both inside and outside the residence. During this time, [the victim] and the other boys were yelling in the driveway and being loud. Sometime after this the Defendant and Eaves got into the Defendant's vehicle, which was parked in the driveway,

along with [the victim] and another high school boy . . . . Defendant was talking to [the victim] because he was drunk and about to fight another boy. Reportedly, while this conversation was taking place, codefendant Eaves was engaged in kissing and petting with the minor . . . in the backseat. [The victim] then exited the vehicle followed by the Defendant. Later in the evening the victim . . . describes the following events:

> Everyone went inside. Me and [the Defendant] were in the garage. She was smoking a cigarette and I was drinking a beer. I turned on a Terry Clark song and we were dancing. [The Defendant] then pulled me over to the couch and said "come here." She was sitting on my lap. [The Defendant] then started kissing me and I kissed her back. She fell back on the couch and pulled me on top of her. I unbuttoned her pants, she unbuttoned my pants. She pulled down my pants to my knees and then she pulled her pants off. She said, "Do you really want to do this?" I said, "It's up to you." I said "Do I need to go get a condom?" She said "Yes." I ran out to my truck and got a condom. When I returned she jerked me back on the couch and asked "Do I need to put it on for you?" I said "No, I got it." Then we started making out and then I penetrated her.

The Defendant and the victim were then interrupted by the codefendant, Eaves, who laughed and went back into the house. As the evening went on, [the victim] was allowed to sleep in the Eaves' bonus room along with two other boys because they were still drunk. The Defendant chose to sleep in the bonus room with them. After she mistakenly believed everyone was asleep, the Defendant went to the recliner where [the victim] was sleeping, unbuttoned his pants, and had sex with him. Defendant's 14 year-old daughter was also in the house as well with her 17 year-old boyfriend.

State v. Susan Gail Stephens, No. M2008-00998-CCA-R9-CO, 2009 WL 1765774, at *1-2 (Tenn. Crim. App. June 23, 2009) (alterations in original).  The Defendant was charged with two counts of statutory rape and two counts of contributing to the delinquency of a minor.  Id. at *3.  The Defendant applied for and was denied pretrial diversion.

In the Defendant's first appeal, this court found that the prosecutor failed to consider the Defendant's amenability to correction.  Id. at *5.  Consequently, the case was remanded to the prosecutor for reconsideration.  Id.

After the case was remanded, the Defendant submitted additional information to the prosecutor to support her application for pretrial diversion.  The additional information detailed her work history since the filing of the original application, updated the prosecutor about her daughters' progress in school, informed the prosecutor that the Defendant was going through a divorce, and described how media coverage of the case had affected her daily life.  Additionally, the Defendant noted that she had not been charged with any other crime since the filing of her original application.  The Defendant also stated, "To say I regret my actions would be a huge understatement.  I realize how many people I have hurt and changed lives forever.  I am hugely remorseful and very sorry for all the pain I have caused everyone involved."  The prosecutor again denied pretrial diversion.  In his written denial, the prosecutor claimed, "[T]he State is under no obligation to permit the Defendant to file a new application or to consider any other factors than those originally filed and considered by the Circuit Court and Court of Criminal Appeals."

On appeal from this second denial, this court again remanded the case for reconsideration.  State v. Susan Gail Stephens, No. M2010-01373-CCA-R9-CD, 2012 WL 340247, at *7 (Tenn. Crim. App. Jan. 31, 2012).  We held that the prosecutor should have considered the Defendant's updated information because such "surely would have reflected upon the likelihood that the Defendant would or would not become a repeat offender."  Id. at *5.

Again, the Defendant submitted updated information to support the third consideration of her application for pretrial diversion.  This information included an updated work history, an explanation as to how the Defendant was coping as a single mother following her divorce, and details about her daughters' success as honors students in their respective schools.  Additionally, the Defendant gave an account of how her charges were affecting her daily life, including the following statement:

> I am ashamed of my behavior and will always be.  I am greatly saddened by how it has affected all those involved, the victim, my family, and my friends.

Since February 2006 I have been a fully law-abiding citizen, with not even a traffic ticket. I continue to regret the pain I have caused others due to my actions in February 2006.

The prosecutor again denied the Defendant's application for pretrial diversion. He claimed that, although he erroneously stated he was not obligated to do so, he had considered the updated information submitted before denying the Defendant's application the second time. To clarify the record for the instant appeal, the prosecutor explicitly stated that he was considering all of the information the Defendant had submitted to support her original application.

The prosecutor noted that, aside from the instant offenses, the Defendant had no criminal record. Additionally, the prosecutor concluded that the Defendant had a favorable social history, including participation in numerous church activities and extra-curricular functions with her daughters. The prosecutor noted that the Defendant's physical and mental health were not relevant to the proceeding. As to the Defendant's amenability to correction, the prosecutor expressed concern that the Defendant "appear[ed] to describe the events in a light most favorable to her own cause," a practice the prosecutor had seen from "countless child sexual offenders." Additionally, the prosecutor noted that, while the Defendant had sought counseling after the charged offenses, she stopped counseling shortly after her application for pretrial diversion was filed due to "insurance issues." The prosecutor commented that "the dates certainly raise suspicions as to her motives." Nevertheless, the prosecutor concluded that the Defendant was "moderately amenable to correction." Despite this conclusion, however, the prosecutor did not believe the Defendant was a suitable candidate for pretrial diversion because "she ha[d] expressed much more remorse over the consequences to herself and her family than the effects to the victim, his family, the other children present, or to the community."

Turning to specific and general deterrence, the prosecutor described the Defendant as a "predator" who pursued the victim over the course of several encounters. Looking at specific deterrence, the prosecutor again commented he could not determine whether the Defendant was remorseful for her actions or for being caught. As to general deterrence, the prosecutor cited the television show *Desperate Housewives* to illustrate a need to deter middle-aged defendants from taking advantage of teenage victims. Additionally, the prosecutor stated that the community trusted adults to ensure the safety of children. The prosecutor concluded that the Defendant's actions were a breach of that trust, as evidenced by "the flood of communication to [the district attorney general's] office from members of the general public." Therefore, granting pretrial diversion would lessen the seriousness of the offense and "do nothing to deter others from committing the same or similar offenses[.]"

- 6 -

Finally, the prosecutor concluded that pretrial diversion would not serve the ends of justice or the best interests of the public or the Defendant. Instead, the prosecutor concluded that granting pretrial diversion would "unquestionably make a mockery of the ends of justice while at the same time place the public and more specifically, our children, at a higher risk."

The Defendant petitioned the trial court for a writ of certiorari. Upon review, the trial court found that the prosecutor had considered all the relevant factors and did not abuse his discretion in denying pretrial diversion. The Defendant requested and was granted permission to file this interlocutory appeal.

## Analysis

In this appeal, the Defendant argues that the prosecutor abused his discretion in denying pretrial diversion. She asks this court to reverse the trial court's order affirming the denial of pretrial diversion and remand the case with instructions that diversion be granted. Additionally, the Defendant asks this court to direct the prosecutor to grant pretrial diversion nunc pro tunc to the date of her 2012 application as an equitable remedy. We agree that the prosecutor abused his discretion in denying pretrial diversion and remand the case with instructions that the Defendant be placed on pretrial diversion. However, we decline to instruct the prosecutor to grant pretrial diversion nunc pro tunc to 2012.

The pretrial diversion statute allows a qualified defendant to enter into a memorandum of understanding with the State to suspend prosecution for up to two years. Tenn. Code Ann. § 40-15-105(a)(1)(A) (2006). A qualified defendant is one who has not been previously granted diversion and who does not have a disqualifying prior conviction. See Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(*a*)-(*b*) (2006). Additionally, the offense for which pretrial diversion was sought cannot be a Class A or B felony, an enumerated Class C felony, an enumerated sexual offense,[1] driving under the influence, or vehicular assault. Tenn. Code Ann. § 40-15-105(a)(1)(B)(i)(*c*) (2006). If granted pretrial diversion, the defendant is required to observe at least one condition in order to successfully complete diversion. Tenn. Code Ann. § 40-15-105(a)(2) (2006).

Statutory eligibility for pretrial diversion does not entitle a defendant to diversion. State v. McKim, 215 S.W.3d 781, 786 (Tenn. 2007) (citing State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999)). The decision of whether to grant pretrial diversion lies within the prosecutor's discretion. State v. Bell, 69 S.W.3d 171, 176 (Tenn. 2002). In deciding

---

[1] Because statutory rape was not an enumerated sexual offense under Tennessee Code Annotated section 40-15-105(a)(1)(B)(ii) at the time of the offense, the Defendant was not disqualified from seeking pretrial diversion.

whether to grant pretrial diversion, the prosecutor "should focus on the defendant's amenability to correction." Id. Consequently, "[a]ny factors which tend to accurately reflect whether a particular defendant will or will not become a repeat offender should be considered." State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983). Such factors include the circumstances of the offense, the defendant's criminal record, social history, physical and mental condition, the need for general and specific deterrence, and the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. Id. at 354-55; see also State v. Richardson, 357 S.W.3d 620, 626 (Tenn. 2012); McKim, 215 S.W.3d at 786-87. However, the circumstances of the offense and the need for deterrence "cannot be given *controlling* weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" McKim, 215 S.W.3d at 787 (emphasis and alterations in original) (quoting State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993)). "Absent such exceptional circumstances, the prosecutor must consider the defendant's amenability to correction and the likelihood that the defendant will not commit further crimes." State v. Russell L. Tipton, No. M2006-00260-CCA-R9-CO, 2007 WL 2295610, at *6 (Tenn. Crim. App. Aug. 9, 2007).

A prosecutor's denial of pretrial diversion must be in writing and enumerate all the relevant factors considered as well as the weight accorded to each. Richardson, 357 S.W.3d at 626. The defendant may appeal the prosecutor's decision by petitioning the trial court for a writ of certiorari. Id. at 626-27. The district attorney general's decision is presumed to be correct, Curry, 988 S.W.2d at 158, and the trial court must determine whether the prosecutor abused his or her discretion by examining only the evidence considered by the prosecutor. Bell, 69 S.W.3d at 177. The trial court may not reweigh the evidence but can only look to the district attorney general's methodology. State v. Yancey, 69 S.W.3d 553, 558-59 (Tenn. 2002). The appellate court's review is confined to a determination of whether the trial court's decision was supported by a preponderance of the evidence. Richardson, 357 S.W.3d at 627 (citing Curry, 988 S.W.2d at 158 and State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997)).

"A reviewing court may find that the district attorney general abused his or her discretion in one of two ways: either by failing to consider or articulate all the relevant factors or considering and relying upon an irrelevant factor, or (2) by making a decision that is not supported by substantial evidence." Richardson, 357 S.W.3d at 627 (citing McKim, 215 S.W.3d at 788-89; Bell, 69 S.W.3d at 179; Curry, 988 S.W.2d at 158).

Should the district attorney general fail to consider all the relevant factors or give undue consideration to an irrelevant factor, the reviewing court must vacate the district attorney general's decision and remand the case to allow the district attorney general to reconsider and weigh all the relevant factors. Id. However, if the reviewing court

determines that the district attorney general properly weighed all the relevant factors and did not give undue consideration to any irrelevant factors, but the denial of pretrial diversion is not supported by substantial evidence in the record, "the reviewing court may order the defendant to be placed on pretrial diversion rather than remand the case to the district attorney general." Id. (citing McKim, 215 S.W.3d at 788 n.3); see also Tenn. Code Ann. § 40-15-105(b)(3) (2006).

In this case, it is evident that the prosecutor considered and weighed all the relevant factors. However, we do not believe the decision to deny pretrial diversion is supported by substantial evidence in the record. The prosecutor identified the need for deterrence and the ends of justice as factors weighing against granting pretrial diversion. Additionally, even though the prosecutor concluded that the Defendant was "moderately amenable to correction," he did not believe this factor weighed in favor of granting diversion because the Defendant had not expressed sufficient remorse for her actions.

As this court has previously held, the prosecutor may not require the Defendant to admit guilt before granting pretrial diversion. See Russell L. Tipton, 2007 WL 2295610, at *5 (citing State v. Thompson, 189 S.W.3d 260, 268 (Tenn. Crim. App. 2005)). To do so constitutes an abuse of discretion. Id. Therefore, we conclude that the prosecutor abused his discretion when he concluded that the Defendant's amenability to correction weighed against granting pretrial diversion because she had not demonstrated sufficient remorse for her actions. Consequently, the record does not contain substantial evidence to deny pretrial diversion on the basis that the Defendant is not amenable to correction.

Likewise, the record does not contain substantial evidence to support the conclusion that the ends of justice and best interests of the Defendant and the public favor denying pretrial diversion. In regard to this factor, the prosecutor simply stated, "[P]retrial diversion in this case would unquestionably make a mockery of the ends of justice while at the same time place the public and more specifically, our children, at a higher risk." The prosecutor does not point to, nor can we find, any evidence in the record to support this conclusion.

The only remaining factor the prosecutor cited as weighing against pretrial diversion is the need for specific and general deterrence. As noted above, the circumstances of the offense and need for deterrence "cannot be given *controlling* weight unless they are 'of such overwhelming significance that they [necessarily] outweigh all other factors.'" McKim, 215 S.W.3d at 787 (emphasis and alterations in original) (quoting Washington, 866 S.W.2d at 951). We do not believe there is substantial evidence in the record to show that the need for deterrence in this case is so exceptional as to outweigh all other factors to be considered when determining whether the Defendant should be granted pretrial diversion. This is especially true when the record clearly indicates that the Defendant has not been arrested for or charged with any other

crime since the instant offenses. Because there is no substantial evidence in the record to support the prosecutor's decision to deny pretrial diversion, we reverse the order of the trial court and remand this case with an instruction that pretrial diversion be granted.

However, we decline to instruct the prosecutor to grant pretrial diversion nunc pro tunc to the Defendant's 2012 update to her application. A judgment may be ordered nunc pro tunc when the judgment is pronounced but not entered. Thomas v. State, 337 S.W.2d 1, 4 (Tenn. 1960). The nunc pro tunc order allows the order to be entered as of the date of its pronouncement. Id. However, our supreme court has stated that,

> The general rule is that to justify a nunc pro tunc order there must exist some memorandum or notation found among the papers or books of the presiding judge, and a nunc pro tunc order will not be valid unless there is some such memorandum showing what judgment or order was actually made and these facts recited.

Id.

This is not a case where the Defendant was granted pretrial diversion but, through some error, that fact was never recorded. Instead, the prosecutor has consistently denied pretrial diversion. Accordingly, a nunc pro tunc order is not appropriate in this case.

Additionally, although the Defendant asserts that she has been under "court supervision" during the pendency of these charges, there is nothing in the record indicating that she had been required to comply with any of the conditions listed in Tennessee Code Annotated section 40-15-105(a)(2). Successful completion of pretrial diversion requires that the Defendant comply with one or more conditions as agreed upon by the parties. Tenn. Code Ann. Section 40-15-105(a)(2) (2006). Because she has not been required to comply with any of these restrictions, the Defendant has not yet successfully completed pretrial diversion. Therefore, contrary to the Defendant's assertions, equity does not require granting pretrial diversion nunc pro tunc to 2012.

## Conclusion

For the aforementioned reasons, the judgment of the trial court is reversed. The case is remanded to the trial court with instructions to order the prosecutor to grant pretrial diversion under such terms and conditions as are deemed appropriate by the trial court.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 10 -